OriNION OF THE COURT.
John A. Tarascan, being seized in fee of a lot in the town of Shippingport, on the 25th of August 1815, sold and conveyed it to John P. Desmane, for the sum of fifteen hundred dollars, secured by three notes of five hundred dollars each, the first payable the 1st of Sep» terober 1817, the second on the 1st of September 1818, and the third on the 1st of September 1819; and, more effectually to secure these payments, took from the said Desmane a re-conveyance of the same lot, with a condition reciting the notes or instalments, and proceeding ■as follows:
“Now, if the said John P. Desmane, his heirs or assigns, shall well and truly pay off said notes as they respectively become due and payable, then and in that case the said John A. Tarascón, his heirs, executors, administrators or assigns, shall re-convey the before described lot of ground hereby bargained and sold, with the appurtenances, unto the said JohnP. Desmañe, his heirs or assigns; hut if the said John P, Desmane, his heirs or assigns, shall make default inthepajment of said notes, or either of them, as they become due, then and in that case, it shall and may be lawful for the said Tarascón, his heirs, executors, administrators or assigns, to sell the said piece of ground, with its appurtenances, or so much thereof as will be sufficient to satisfy and pay off such sum or sums of money as shall be- then due at the lime of such sale, and all costs of sale and expence of advertising. And if a sale or sales of the premises shall be made by the said Tarascón, his heirs, executors, administrators or assigns, it shall be lawful for the said Tarascón, his heirs, executors, administrators or assigns, to convey the part or parts so sold, to the purchaser nr purchasers thereof, in fee. But the said Tarascón covenants that no sale shall be made of said premises, until the expiration of twenty days after default shall be made in the payment of said notes, or either of them, with the interest due thereon, and twenty days’ notice shall be given of the time and place of sale of said lot of ground, in the public newspapers printed in the town of Louisville, in the county and state aforesaid; and if no such paper shall be then printed in said town, such notice shall be set up at two of the most public places in Shippingport. And John A. Tarascón covenants apd agrees to and with the said John P. Desmañe, th^t *406 he will, or his heirs, executors, administrators or assigns shall, truly and faithfully execute the said trust; and the said John P. Desmarie covenants and agrees to and with said John A. Tarascón, his heirs, &c. that he will not commit,or suffer tobe committed, any waste in the premises aforesaid. Also, that the said John P. Des-marie, his heirs, &c. shall have power to direct, in writing, the part or parts so to be sold; and if he or they shall fail or refuse to give such direction, said John A. Tarascón, his heirs, executors, administrators or assigns, may sell arty part or parts, at his or their option; that if any part of the premises shall remain unsold, after the notes aforesaid shall be satisfied, such remainder shall be re-conveyed as aforesaid; and that the said Desma-rie shall remain in the premises, rent free, of such part or parts as shall not be sold to pay said notes; hut said Desmarie, his heirs, &c. are to pay the taxes on said lot; and that if any part of said premises shall be sold to pay said sums, principal or interest, that he, the said Desmarie, his heirs or assigns, shall speedily and personally deliver the part or parts so sold, to the purchaser or purchasers thereof; and that if the whole of said premises will not sell for a sum or sums of money sufficient to pay off said notes and the interest, said John P. Desmarie, his heirs, executors, administrators or assigns, shall be liable for, and bound to pay the deficiency,”
Afterwards, on the 21st of July 1817, Desmarie sold, the said lot to Richard H. Hardin, and executed his bond, under a penalty, reciting in the condition that he had sold the said lot to Hardin for §3,000, payable in three equal instalments, secured by notes payable in nine, twelve and eighteen months, and binding himself to convey the said lot so soon as the last payment of the purchase money was. made, and covenanting to keep Hardin in the quiet possession thereof, in which he had placed him.
Afterwards, Hardin, being indebted to Peter B. Ormsby, on the 18th of October 1817, by deed of indenture duly recorded, mortgaged said lot to secure-said debt to Ormsby, and in the mortgage recited the title by which he held it, and delivered up the bond of Desmarie to Ormsby. This mortgage is in the usual form, with a defeasance, in case Hardin paid the money. On the default of Hardin to pay the sum secured by *407 this mortgage, Ormsby filed his bill to foreclose the mortgage, and a sale was decreed in the circuit court of Jefferson, on the 13th of February 1819, and that sale was executed by a commissioner, and Ormsby became the purchaser; and at the July term of said court, in the year last aforesaid, a commissioner, under an order of said court, conveyed all the interest of said Hardin to Ormsby.
In the mean time, Desmarie paid up to Tarascón only $400 of the first $500 note due from him for the price of th<^ lot, and failed to pay the remaining $100, as well as the second note of $500, due on the 1st of September 1818, and Tarascón, acting under the deed of trust executed by Desmarie to him, set up the lot at public auction, on the 13th of April 1819, and Thomas Philips became the purchaser, having bid the $100, balance of the first $500 note of Desmarie, and the whole of the second note of $500, due the 1st of September 1818, with the interest on each, and also agreeing to pay the remaining note of Desmarie for $500, when it should become due; and Tarascón conveyed the lot to him accordingly.
Peter B. Ormsby then filed this bill, alleging that the lot was worth all the sums due for it from Desmarie to Tarascón, and from Hardin to Desmarie, and claiming to be let in to redeem the lot. 1 He avers that Tarascón, Desmarie and Philips all knew that he held the equity of the lot, before the sale from Tarascón to Philips, and that Tarascón never gave him any notice of the sale, or any notiee to Desmarie, so as to enable either to point out, according to the deed of trust, what part should be sold; nor had he, Tarascón, advertised the sale, according to the deed of trust; and that said Thomas Philips had bid off the lot for the benefit of one Thomas Joyes, or had let Joyes into partnership with him in the purchase, and that Hardin had immediately put said Philips and Joyes into possession of the lot, and tliey had refused to let him redeem it, and now receives and continues to receive the rents and profits, which are large. He further charges, that he offered Taras-cón to pay him .the note due, for.which the lot was sold; but Tarascón refused to receive it from him. Pie exhibits also another claim in the hands of Philips and Joyes for the lot, arising in this manner: Peter Lee, as-signee of John P, Desmarie, obtained judgment against *408 said Hardin, for 1,000 or upwards, and issued execu tion thereon, which was replevied, and the execution on the replevin bond was levied upon the lot as the property of said Hardin, and the lot was sold about the 9th of December 1818, and Joyes became the purchaser at the sheriff’s sale, with express notice of the claim of said Ormsby, and with an understanding, expressed at the time, that it was to be satisfied out of the lot; which sale was before that of Tarascón to Philips. He makes Tarascón, Desmarie, Philips and Joyes parties, and prays to be let in to redeem the lot, and an account to be taken of the rents and profits, since the possession of Philips and Joyes.
Tarascón answered, insisting that he could not have given Desmarie any notice of the sale, because he had left the country, and insists he was not bound to give such special notice. ' He avers that he gave the notice by advertisement, required by the deed of trust, and sold the lot with due Care, for the most that he could get; insists that his’lien was the oldest, and denies that Ormsby tendered him the money due. from Desmarie; but does not say whether Ormsby expressed a willingness to pay it; nor does he deny notice of Ormsby’s claim.
Against Desmarie publication was made as a nonresident.
Philips and Joyes both answered, insisting that the s ale by Tarascón was fair, and contend that they have a right to hold the estate. They admit an agreement between them, that Joyes was to pay, and had paid, a part of the auction price, and was to have part of the lot. They admit notice of the claim of Ormsby at the time of their purchase. Joyes insists upon his claim under the execution of Lee; avers that the note on which his judgment was obtained, was one of the notes of ‡ 1,000 due from Hardin to Desmarie for the lot in question, assigned to Lee; that, believing the lot was bound for the money, he and Joseph Amiss became sureties fof Hardin in a replevin bond, and to indemnify them, took a mortgage from Hardin for the lot, dated the 19th of September 1818, agreeing, on the face of the mortgage, to surrender the lot for sale under execution, when one should issue on the replevin bond; and that they, to wit, Amiss and himself, gave up the said lot for sale accordingly, and it was sold by the sheriff, who had not *409 yet, but would make a conveyance to Joyes, who pur-fchased it at $>U000, to save himself, as he was bound for the debt. He admits that Ormsby’s claim was mentioned at the time of the sale by the sheriff, but denies that any understanding took place, that it was to be paid or discharged by the purchaser.
The court below dismissed the bill of Ormsby with costs, in favor of Joyes and Philips; and from that decree Ormsby has appealed, and now contends that he has a right to redeem, on the general principle, that such a deed of trust as that held by Tarascón, is no more than a mortgage, and is subject to redemption in the hands of Tarascón or his vendee, unless the sale of Tarascón had been made if\ pursuance of a decree of a court of equity; and also, if this is not the general rule, that as Tarascón gave no notice to him or Desmane, of the sale, specially, and has not proved notice by proper advertisement, according to his deed of trust, the lot is therefore subject 18 redemption in the hands of the as-signee of Tarascón, in this particular case; and that the sale by the sheriff, under execution, to Joyes, being of an equity only, passed no title.
It is a modern invention, to annex a power of sale to deeds of mortgage, in order that the sale may be effectuated without resort to a court of chancery; and upon the effect of such sale, there have, no doubt, existed different opinions; some contending that the estate passed by thesale was a redeemable interest, and others that the sale is a bar to the equify of redemption. We call it modern, although it has existed probably since the existence of our government," because the question has not been decided, within the knowledge of this court, either here or in Virginia; and at a late period, in the parent state, we find the question debated at the bar, and waived by the court. In New-York, a statute exists, which declares such sale to he a bar to the equity of redemption; hence we discover in the judicial decisions of that country, many cases, wherein it is held that such sales are a bar to the equity of redemption. In these cases we also find many intimations given, that without the statute, the estates sold would be redeemable in the hands of the vendees. There is no doubf, that as this question has so long escaped adjudication, it has now grown to some magnitude, and may be of some importance, and probably would be still more imnor- *410 tañí, if a statute of this state had not of late required an application to a court of equity, in every instance, to effectuate a sale. A compliance with this statute will produce uniformity, and less doubt in future cases, as a court of chancery is competent, in every case, to bar the equity of redemption, beyond a doubt.
Whether prior to the passage of the act of assembly requiring a decree in chancery to effectuate a legal sale under a deed of trust, or not, it is certain, that a sale made not pursuant to the powers contained in such deed, did not pass the legal estate.
1. We do not, however, conceive ourselves hound to decide this question'at this time; for although it should be admitted, that individual sales, under powers such as that contained in the deed of trust from Desmarie to Tarascón, do bar the equity of redemption, and pass an irredeemable estate, we have no hesitation in saying, that to do so, the power must be substantially pursued, and its essential requisites complied with; and if this is not the case, the purchaser can hold no better estate than his vender; because he takes under the power, and is bound to see that its terms are complied with. Hence, the decisions of New-Ycrk have not held sales good, even made under the statute, unless the power was pursued; and, indeed, such decisions comport with the soundest principles ©f law and equity. No doubt, the debtor is entitled to redeem, before the sale is made; and if his interest is injured by the sale made contrary to the power given by him, he ought to have redress for a violation of that power, or to be permitted to I’each the estate in the hands of the vendee, by setting aside the sale improperly made, in which impropriety of departing from the power, the vendee, as we have seen, must be particeps criminis. We shall, therefore, en-quire, whether this sale has been conducted in any manner contrary to, or in violation of the power contained in this deed from Desmarie to Tarascón. Notice of this sale by advertisement in a public newspaper printed in Louisville, was given, as required by the power; and we cannot say, that in this respect the requisitions of the power were disregarded; nor is it requisite for us to say, that a departure in this respect would have affected the title of the purchaser; nor do we conceive it incumbent upon Tarascón to have given, by the terms of the power, personal notice to Desmarie, or to Ormsby, of the time and place of sale, to enable them to point out the part to he sold. No such notice is required by the expressions of the deed, and Desma-rie, or those holding under him, wmre bound, at their peril, to take notice of the sale, if that kind of notice *411 was given by public advertisement, which the deed required. On these grounds, which have been pressed in argument, we* see no reason to interfere with the Sale made by Tarascón, and will turn our attention to one other, which is more substantial.
Whore the power au-thorisesa sale of the whole or such part "' of the lot as may be sufficient to dis-, charge the in-stalments then due, a sale for tbo instalments then, and for* one not then due, is void.
2. It will be seen, that by the terms of the power, if the sale was made on default of payment of any of the first instalments, before the last became due, no more of the lot could be sold than was necessary to pay what was really due; that Desmane had the right to point out the part to be sold, and if he, failed to do so, Taras-cón might do it. The sale was made for a balance of the first, and the whole of the second instalment, before the third had become due; and in such case, the sale could only be made of what was sufficient to pay what was due, exclusive of the last instalment. 'Notwithstanding this, the purchase of Philips was made of the whole, by engaging at the sale to pay, not only what was due, but also the $500, the last instalment, which had not become due. The apology made for this, in the answers of Tarrascon, and'Philips and Jbyes, is, that no greater hid, after great exertioris, could be procured, than the money due and costs of sale; and that this agreement of Philips, the purchaser, to pay the $500, the remaining, instalment, was an arrangement by-thc-by, not in the form of a public bid, but a private understanding ; and this $500 was to be paid to Desmañe, or for his use, and Tarascón was to receive it for Des-mañe; and thus, in Desmarie’s absence, a bargain was tobe made with him, to pay him $500, and Tarascón, without his consent, was constituted his agent or receiver. The acceptance of this money in lieu of part of the lot, was the very matter which Desmañe had guarded against in the deed, and by the deed, he was entitled to retain land in lieu of money,, for such balance not due, of which this arrangement deprived him. If Philips was unwilling, as well as all other bidders, to. bid the sum due for less than the whole lot, it is hard to account for his generosity in agreeing to pay. $500 more than his bid, in a few months, unless it is by supposing that he preferred having all the ground, and was-willing to pay more money for it, to paying less money and accepting a less quantity of land, which was what the deed provided against, and that Tarascón and himself so contrived it, by this private arrangement, that *412 be should get tbe whole, by paying more money, under colour of paying it generously to Desmarie. This was deviating from the requisites of the deed, and limits of the power, in a substantial point, and one vitally affecting the interest of Desmarie and those holding under him, and a deviation in which Tarascón was not guilty alone, but in which Philips was a direct and full participator. For this reason, the sale ought not to he allowed to stand, but ought to be set aside, and we have no hesitation in setting it aside in favor of Ormsby, who is entitled to the oldest equity derived from Desmarie through Hardin.
Tiothingbut a legal estate in lands, was subjected to sale for the payment of. debts, by the acts of 179^ an/11798.
3, We do not apprehend, that the purchase of Joyes,, under the execution of Lee against Hardin, presents any bar to the redemption by Ormsby. Hardin bad, at that time, no legal estate, which alone is the subject of sale", according to the repeated decisions of this court. It may, however, be said, that Hardin had given a deed of trust to Joyes and Amiss for the same lot, to indemnify them against the consequences of their being his sureties to Lee, in tbe replevin bond, and that this deed provided that the lot should he given up for sale under this execution, and, therefore, Hardin has assented to and ratified this sale by the sheriff. To this it may be replied, that before this deed to Joyes arid Amiss, and before even tbe execution, Hardin bad parted with the lot by mortgage to O.rmsby; so that at the dale of the sale under execution, and even at the date of his deed of trust to Joyes and Amiss, as his sureties, he not only had no legal estate, but not even an equity, which he had not previously disposed of to Ormsby; and it is difficult to perceive, how such a deed, and much more, how a sale under execution could pass any such title from a man who had neither a legal nor equitable es-. fate to dispose of, as to bar the equity of redemption.
. It is however contended in the answer of Joyes, that this debt to Lee, lor which judgment was obtained and execution issued, was one of the notes executed for the same lot by Hardin to Desmarie, and that Desmarie, on his sale to Hardin, no doubt retained a legal lien for the purchase money, subordinate to that of Tarascón, and that this lien was transferred by the assignment of this note from Desmarie to Lee, and, consequently, passed to Joyes and Amiss, when they became sureties for Hardin in a replevin bond to Lee. It is true, that the *413 j udgment was rendered in favor of Lee as assignee of Des-mane, against Hardin, and is for the sum of $1000, which corresponds with any one of the instalments, which, by the face ofth’fe title bond from Desmañe to Hardin, now held by Ormsby, was to have been paid by Hardin to Desmañe, and the interest given by the judgment commences at the date when the second instalment became due. These circumstances raise a presumption, that the note was given (or one of these instalments due to Desmañe for the same lot. But the note itself is not filed; and, of course, the fact is not certain.
Whether, by an assignment of a note taken for the purchase money of lands, the lien of the vender on the lands passes to the as-signee, is doubtful.
The principle on which the account of rents, profits and improvements was directed to be taken',.
4. If in this, however, we are mistaken, and the fact is in his favor, it is not entirely dear, that the assignment of this note to Lee by Desmañe, transferred to Lee the lien, which Desmarie held upon the lot. But even conceding this point to be in favor of Joyes, it cannot be conceded, that Hie bare act of becoming sureties for Hardin to Lee, who held this lien, in a replevin bond, transferred, per se, this implied lien from Lee, by the tacit operation of law, to the sureties in that reple-vin bond, when Joyes and Amiss were not parties to the first contract. The entering into such bond with surety, might extinguish such lien, but never could transfer or assign it. The attitude of Joyes, then, as amere surety for Hardin in this replevin bond, to secure the purchase money for this lot, cannot bé more favorable, than that of being surdty for any other debt. He trusted his principal in becoming so, and must look to him for his indemnity, and cannot claim a lien by his surety-ship, upon the lot in question. His claim, therefore, furnishes no objection to the relief sought by Ormsby.
5. We are, therefore, of opinion, that the right of Philips and Joyes to hold the estate free of redemption, cannot be sustained, and that Ormsby is' entitled to redeem, as he would have been, had Tarascón continued to hold the title; and that Philips and Joyes must .be considered as mortgagees in possession, and that they must account for rents, or rather, the net profits, after the expence of necessary repairs, are deducted. In taking the account, no allowance can or ought to be made, for new improvements made thereon by Joyes and Philips — Moore vs. Cable, 1 Johns. Chan. Rep. 385. And they ought not to be charged with such rents as have arisen exclusively from their own improvements, Tfiey will also be paiitled to , the money paid by them to *414 Tarascón, with interest thereon from the times respectively when the payments were made. Ormsby will also be bound to pay any money due to Desmane, as the consideration or the price of the lot, between him and Hardin, which has not been paid by or recovered from Hardin. This account ought to be taken in the court below by a commissioner or commissioners appointed for that purpose; and, on this account being taken and settled, the' court below may give a reasonable time of redemption to Ormshy; and if in that time he should not redeem, a sale of the property ought to he decreed, and Ormsby will he entitled to the surplus, after deducting the sums which he would have been bound to pay on redeeming the lot.
it is a matter of doubt how-far the doctrine of substitution can be applied to implied lions; but it is cor-tain, that one claiming as the assignee ofan implied Jien, must make his assignor a party, in order to effectuate it against any one.
6. We will finally take some notice of the effect of the deed of trust given by Hardin to Joyes and Amiss. This is subsequent to the lien to Ormsby, and was not given by Desmarie, who held a lien for his purchase money superior to that of Ormsby; but by Hardin, who held no lien, hut had parted with what he had. We are also aware, that equity will, sometimes, where a security has paid a debt to a creditor who holds a lien,, substitute that security for the creditor, and invest him with the rights of the creditor over the debtor, by directing the lien to be assigned. Hence it may be contended, that Joyes ought to be substituted for Lee, and1 be invested with his lien, if any. . It is a matter of some doubt, how far the doctrine of substitution can be applied to implied liens, which are of such a delicate nature as to be destroyed by many acts, and by payment itself, and even by giving that security who claims the-lien. But, without determining this question, and ad-mittingfor the sake of argument, that such substitution should be made, Lee is no party to this suit; and it is necessary he should he, to reach the lien he held, if' any. It was not necessary for Ormshy to bring him before the court to get at his rights, and Joyes has not attempted to do it for his benefit.. We, therefore, cannot give Joyes the benefit of this supposed lien, or of his subsequent deed of trust, or charge up against Orms-hy, as part of the price of redemption, the money which Joyes has paid to Lee for Hardin, as surety in the re-, plevin bond to Lee.
The decree is, therefore, reversed with costs, and the cause remanded, with direction's there to enter a de-.-cree .according to this opinion.