## Henley vs Stemmons, &c.

ERROR TO THE LINCOLN CIRCUIT.

*Vendor's lien.   Subrogation.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

*October 5.*

HELM, as Commissioner under a decree of the Lincoln Circuit Court, sold a house and lots as the property of Wheat, in Stanford, and Withers became the purchaser, and executed bond for $530, the last payment, with Henley as his surety, and took Helm's bond for a conveyance ; Withers sold the house and lots to Stemmons, and gave his bond for a conveyance when the last payment to Helm was made, and received from Stemmons the full consideration ; Stemmons afterwards sold and assigned Withers' bond to Frazier. Henley was apprized of the sale, made by Withers to Stemmons, before the contract was completed or the consideration paid, and made no objection to it, but on the same day that the bond was executed to Stemmons for a title, Henley accepted a mortgage from Withers to himself and one Paxton upon four slaves and a note on Curtes, to indemnify him against his liability as surety to Helm ; and also to indemnify Paxton as surety for Withers on another liability, and permitted Withers to leave the Commonwealth, carrying with him other property. The property mortgaged was, at the time, believed to be sufficient for their indemnity, but Curtes having become insolvent, and the property mortgaged fallen in value, it proved insufficient, upon foreclosure and sale, to pay the debts for which they were liable. Henley having been coerced by Helm to pay the whole debt of Withers, for which he became responsible, filed this bill against Withers, Stemmons and Frazier to be subrogated to the lien of Helm, the creditor, 'on the property sold. The Circuit Court dismissed his bill and he has appealed to this Court.

*Case stated.*

Though it was said by this Court in the case of *Ducker & Jones* vs *Gray,* (3 *J. J. Marshall,* 163,) which was a

*The case of Ducker & Jones*

case of an *executory* contract for the conveyance of the lots in question *upon the payment* of the consideration, (as we discover by looking into the original record,) that the acceptance by Gray of other security, was a *waiver* of his lien on the lots : yet it was clearly intended, in that case, that the vendor might proceed, in chancery, against the lots sold to coerce payment in case of the insolvency or non-residency of the vendee and his surety. But no such allegation being made, the decree subjecting the lots to sale was reversed, and the vendor's bill directed to be dismissed; so that, though the Court asserted the principle, that the lien was waived, they could not have meant that the waivor was absolute and unconditional, but only that the vendor's right to enforce it was postponed, and could not be exerted until he had exhausted his remedy against the obligor and his personal security, or was deprived of his right to proceed against them by their

A vendor who has not conveyed, does not waive his lien by taking personal security, & may assert such lien when the personal security proves unavailing, if not before.
removal.    Be this as it may, we cannot concede that the vendor retaining the title, and especially where he retains it to be conveyed on the payment of the consideration, or on the payment of the last instalment of the consideration, looses his entire hold upon the estate, sold as the means of payment, by taking personal or other security for the same.

It is settled that a lien may be created by a deposit of title deeds as a security for advances in money; if so it would seem that the retention of the title, as well as title deeds, should be construed an intention to retain the lien as a security for the ultimate payment, at least, of the

The question of waiver is one of intention; *Story Eq.* 470, *et seq.*
consideration.    It is also said, by high authority, that the question of waiver of his lien by the vendor, by taking other security, is a question of *intention* to be established or explained by proof: (*Story's Equity*, 470–1–2–3–4–5, and the notes in favor of, and against, this principle.)    If so, there could not be any stronger evidence of an *intention* not to waive it than the retention of the title and title deed, especially with a covenant to convey only when the last instalment is paid.

When the title is retained, a conveyance cannot certainly be enforced by the vendee, until he has paid and discharged the whole consideration, though he may have

given personal or other security for the payment. He might, by suit at law, be ousted from the possession, notwithstanding such security was given, and we think that the vendor might enforce, in chancery, specific payment out of the estate sold, if not before, at least after, he had exhausted his remedy against the security given, or had failed, or was prevented by the insolvency or removal of the debtor and his personal security, from coercing payment, if not before. If so, it must be upon the ground of an immediate or ultimate lien.

But though it be conceded that a lien was retained by Helm upon the house and lots sold, for the ultimate payment of the consideration, we are not prepared to admit that Henley, as the surety of Withers, the debtor, upon the payment of the consideration, can be substituted in the place of Helm, or invested with his lien on the property sold, and especially after it has passed into the hands of a purchaser; if so, the very security which was taken, and by which the enforcement of the lien against the house and lots sold was postponed, can, after payment, resort to the very property for payment which the Auditor himself could not resort to, until he had exhausted his remedy against him and his principal; if so, he is not only substituted to the lien of Helm, but is allowed to enforce, specifically, a lien upon property Helm could not have enforced, as he never failed to make his money out of the security given.

*A surety for the payment of the consideration of land sold who has paid the price, but who took a mortgage from his principal on other property for his indemnity, & which proved insufficient, will not be subrogated to the original lien of vendor, to the prejudice of a purchaser of vendee, especially when the purchase was made with his knowledge and not objected to.*

But if Helm, by retaining the title, might resort to his lien upon the land, without resorting first to his personal security, it is still to be questioned, whether Henley, the surety, upon paying the debt to him, can claim to be subrogated to his lien. It is said by this Court, in the case of *Ormsby* vs *Tarriscon*, (3 *Litt.* 414,) "It is a matter of some doubt, how far the doctrine of substitution can be applied to *implied liens*, which are of such a delicate nature as to be destroyed by many acts, and by *payment* itself, and even by giving that *security*, who *claims* the lien." And it is said in *Sugden's Law of Vendors*, 392, "that although equity raises an implied lien in favor of a vendor, it is not *extended* to *third persons*, that is, when the vendor is satisfied out of the personal estate of the

*It is not always the case, that where vendee may enforce his lien, that a surety of vendee for the price who pays it, will be substituted to the lien.*

purchaser, in exclusion of a third person, that person cannot resort to the equitable lien of the vendor on the estate." Though this principle is controverted by later authorities, (*Story's Equity* and the authorities referred to,) yet if even it has been made a question, whether a person thus deprived of, and ousted of his rights in the personal estate, by the vendor's choosing to resort to it, rather than to his lien on the land sold, and coercing payment out of it, can be substituted to the vendor's lien on the land, it would seem, certainly, more questionable whether a surety for the vendee, who *undertook* for the *direct payment* of the consideration, and whose securityship is made to operate as an absolute, or at least a conditional *waiver* of the lien against the vendor, ought to be allowed the right of substitution.

It is also said by Lord Eldon, in the case of *Copes* vs *Middleton S. & Rus.* 224, (41*st. vol. Law Journal*, 115, *side page*,) "That the rule," (which entitles the surety to substitution or assignment to him of the securities of the creditor against his principal,) "must be *qualified* by considering it to apply to such securities as *exist*, and do not get back upon payment, to the person of the principal debtor," as in the case of a joint and several bond, which is discharged by the surety, or separate judgments, recovered against the principal and surety on a joint and several note, and payment by the surety; the bond in the first case and the judgment in the second, is discharged and gone, and will not be revived and assigned by a Court of equity, to the surety, nor will he be substituted to the creditor's *former* rights in either, which have been *extinguished* by the *payment*: Gammon vs Stone, (1 Ves. 339;) *Waffington* vs *Sparks*, (2 Ves. 569;) Copes vs Middleton, supra; Jones vs Davis, (4 Russ. 277;) *Doubiggen* vs *Bourne*, (1 Ver. 111.) As the lien of the vendor is raised and kept alive by implication of law only, as a security to the vendor for the consideration, it would seem that its payment, whether made by the vendee or his surety, *satisfies* and *extinguishes* the lien, and it no longer *exists* in the hands of the vendor, and cannot be resuscitated or revived and assigned to the surety, or be made to contribute to his benefit, by substitution. The

lien, in such a case, would seem as certainly to be gone by the payment, as the bond or several judgments in the cases put ; and if gone, it could certainly not be revived, at any rate so as to overreach the intervening claims of purchasers, if it might be revived in behalf of the surety, upon equitable principles, so as to reach the estate sold, while it remained in the hands of the vendee and principal debtor.

This case is not like the case of *Burk et al.* vs *Chrisman et al,* (3 *Ben. Monroe,* 50.) There an *express lien* was *reserved,* which placed it on the footing of a mortgage or an *agreed lien,* in which the title or agreed lien reserved, in legal contemplation at least, requires some act of the creditor to release or surrender ; but here the lien is implied only, and is gone upon payment, without any act upon the part of the creditor. But waiving all the foregoing views, and conceding that under ordinary circumstances, the surety might assert the creditor's lien, in the case of implied liens, yet we cannot concede that Henley can assert and enforce it in this case, against the purchasers.

He was apprised of the contract of sale to Stemmons, before it was consummated and before the consideration was paid, and made no objections to it: but on the contrary, permitted the payment to be made, and took from his principal a mortgage upon property, which was deemed a sufficient indemnity at the time, and permitted Withers to leave the State, carrying with him the residue of his property, without objection or complaint. Under such circumstances, he cannot be indulged in setting up and asserting a lien by substitution, upon the property which was thus sold by his principal, by his *tacit consent,* though the property mortgaged to him, by subsequent events, failed to afford him full indemnity. If a vendor, by taking security, waives his lien upon the estate sold, so may the surety, if he is entitled to be substituted to such liens, *waive* his right by taking security. And Henley, by taking security and permitting the property to pass, for a valuable consideration, into the hands of a purchaser, must be regarded as having *waived* all right to proceed against it, by right of substitution or otherwise.

HENLEY
*vs*
STEMMONS, &c.

This case distinguished from the case of *Burk et al.* vs *Chrisman et al.* (3 *B. Monroe,* 50.)

The decree of the Circuit Court is, therefore, affirmed with costs.

*Harlan & Craddock* for plaintiff: *Owsley & Goodloe* for defendants.