## HIDDEN v. JORDAN.

Where a conveyance of land is executed to one person and the purchase money is paid by another, the grantee holds the land in trust for the person who pays the consideration.

Where a part of the purchase money of land is paid by a person other than the grantee, and no agreement is shown between the grantee and such person, a trust results in favor of the latter for an interest in the land proportioned to his share of the purchase money.

Although a verbal agreement by A to purchase land for B may not be given in evidence to establish a resulting trust where the entire purchase money has been paid by A and the conveyance taken in his name, yet if any part of the purchase money is shown to have been paid by B, a verbal agreement may then be proved which shall have the effect to deprive A of all beneficial interest in the purchase, and to clothe the entire estate in his hands with a trust in favor of B.

Hidden *v.* Jordan.

Whether, where an agent employed by his principal to purchase lands pays the entire purchase money and takes a conveyance to himself, this is not such a breach of good faith as to warrant the reception of parol evidence to establish a trust in favor of the principal—*Query ?*

The Statute of Frauds will never in equity be allowed to operate as a protection to fraud, and for the purpose of showing that a fraud has been committed, or is being attempted, parol evidence will be admitted, even against the words of the statute.

H., being desirous of purchasing a certain farm, agreed verbally with J. that the purchase should be made by and in the name of J., and the conveyance taken to him; that H. should furnish a portion of the purchase money, and that the balance should be advanced by J. and within a certain time repaid to him with interest by H., upon which J. should convey the title to H. H. having furnished the portion of the purchase money as agreed, J. made the purchase, paid the whole price and took a deed in his own name. In an action by H. to compel J. to execute a conveyance to him : *Held,* that the verbal agreement might be proved for the purpose of showing a resulting trust in favor of H., and that the effect of the transaction was to make J. a mere trustee of H. as to the entire property, holding the legal title as security for the repayment of his advances.

APPEAL from the Seventh Judicial District.

In November, 1857, the plaintiff was in possession of a tract of land in Solano County, and had upon it a dwelling-house, fences, and improvements of the value of about $2,000. For some time previous the title to the land had been in controversy between the plaintiff on the one side and one Bissell and the representatives of one Ritchie, deceased, on the other, and a litigation which had been pending was about that time settled by plaintiff admitting the title of Bissell and others and agreeing to purchase from them.

November 12th, 1857, Bissell and the administrators of Ritchie executed to the defendant, Jordan, a deed of the premises in consideration of $6,000 paid in cash and $1,780 in a note of Jordan payable in August, 1858, with interest at one per cent. per month and secured by a mortgage on the land. The plaintiff continued to occupy and cultivate the farm after the execution of the deed to defendant and until the autumn of 1858.

The complaint in this action was filed in November, 1858, and sets up substantially the foregoing facts, and alleges that the defendant in making the purchase and taking the deed from Bissell and others was acting as the agent and on behalf of the plaintiff; that

$2,000 of the cash payment made was money actually advanced by the plaintiff at the time, and that the other $4,000 was advanced by defendant with the understanding and agreement that within two years plaintiff should repay it to defendant with interest at an agreed rate, and within the same period should pay the amount of the note executed by Jordan to Bissell and others with interest; that the deed was made to Jordan for the purpose of securing him for the advances which he was making, and that upon the repayment of those advances defendant was to deed the land to plaintiff; that the note made by Jordan had since been paid from the proceeds of the crops of the land which had been delivered to defendant by plaintiff for that purpose; that the interest of the $4,000 advanced had been settled from time to time by the giving of plaintiff's notes for its amount to defendant in accordance with their verbal agreement. The complaint further averred, that the defendant had in various ways, by words and by acts, (many of which were set forth in detail in the pleading) admitted the character of the transaction to be as now averred, but that shortly before the bringing of the action he had repudiated their verbal agreement, and claimed that by virtue of his deed he was the owner of the land in his own right. The complaint concluded with a prayer that the defendant be decreed to execute a conveyance of the premises to the plaintiff.

Before an answer was made by defendant, plaintiff filed a supplemental complaint, averring that since the commencement of the action he had tendered to the defendant the full amount due to him on account of money advanced to purchase the land with interest as agreed upon, which defendant had refused to receive; that he, plaintiff, was still ready to make said payment, and prayed that an account might be taken of what was due and he be allowed to pay it into Court for defendant upon his executing the deed as prayed for in the original complaint.

The answer is to both the original and supplemental complaint, and consists of a denial in detail (though in a somewhat evasive form) of all the allegations of the complaint tending to show any interest on the part of the plaintiff in the purchase of the land, and avers, substantially, that the purchase was made with the money of

defendant and for his sole use and benefit. It also denies the tender of any money by plaintiff as alleged in the supplemental complaint.

The evidence was taken and reported to the Court by a referee appointed for that purpose. No written agreement was shown to have been made between the parties relating to the interest of plaintiff in the purchase from defendant's grantors. The evidence upon this point on the part of plaintiff consisted in proof of various acts of the parties and verbal declarations by defendant at the time of and subsequent to the purchase. The evidence in this respect was such as to sustain fully the plaintiff's theory of the transaction.

By a subsequent order of the Court, made May 21st, 1861, the referee was required to find as a fact what portion of the purchase money had been paid by plaintiff and what by defendant, and his report on this point showed that defendant had paid $4,000 at the time of purchase and the principal and interest on his note to Bissell and others, $1,960, in all $5,960 ; that plaintiff paid at the time of purchase $2,000 and had subsequently given to defendant at different times as the interest on the $4,000 account his notes for the same amounting in the aggregate to seven hundred and forty-seven dollars and fifty cents, on which notes plaintiff had paid seventy-five dollars ; and that the defendant had received the entire rents and profits of the land during the years of 1858, 1859 and 1860.

The judgment of the Court was, that defendant deed to plaintiff an undivided one-third of the property and account to him for one-third of the rents and profits from the date of the purchase to the rendition of the decree, less one-third of the amount of the note made by Jordan to his grantors and paid by him ; that all the notes between the parties be given up and canceled ; and that defendant repay to plaintiff the seventy-five dollars which he had received from him on the interest notes.

Both parties moved for a new trial, which was denied. The appeal is taken by plaintiff from the judgment and from the order refusing a new trial.

*A. M. Wheaton,* for Appellant.

Defendant in receiving the deed acted as the agent of plaintiff and held the whole property in trust for him. This trust arose from operation of law and could be shown by parol. ( *Osborne* v. *Endicott*, 6 Cal. 149; 1 Greenl. on Ev. sec. 246; 4 Kent's Com. 306, 143; *Pierce* v. *Robinson, Administrator*, 13 Cal. 116.)

A mortgagee who is also a trustee is bound to execute his trust as faithfully as though he were not a creditor. ( *Gunter* v. *Jeans*, 9 Cal. 643.)

A deed absolute upon its face may be shown to be a mortgage. ( *Lee* v. *Evans*, 8 Cal. 424; *Pierce* v. *Robinson*, 13 Id. 116.)

Specific performance of a verbal contract will be decreed in case of part performance. ( *Arguello* v. *Edinger et al.*, 10 Cal. 150; Wood's Dig. art. 398.)

*J. W. Winans*, for Respondent.

I. Respondent, Jordan, was the actual owner of the land and did not hold it in trust for Hidden. Appellant urges that a deed absolute upon its face may be shown by parol to be a mortgage. This proposition we do not dispute. But there is no evidence whatever to show that the deed from Bissell and others to Jordan was designed to be a mortgage. On the contrary, the proof is express the other way. The rule applies to cases where the deed absolute is given as a mortgage by the grantor so as to leave the equity of redemption in him. Here it is claimed that the grantor gave the deed to Jordan to operate as a mortgage from Hidden to Jordan. This was not the fact. Nor if it were could it be within the limits of parol evidence to establish it.

Section sixth of the Act of April 19th, 1850, entitled "An Act concerning Fraudulent Conveyances and Contracts," provides, that " No estate or interest in lands other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same."

Here there was no deed or conveyance subscribed by the parties

or either of them; nor was there, even if the parol testimony be admissible, nor could there be any trust created by act or operation of law, whatever may have been the promises of Jordan, except such implied trust in reference to the proportion of purchase money advanced by Hidden as might render him a *cestui que trust* of Jordan to such quantity of the land as was purchased therewith. And this is, what was held by the Court below. "A trust," says the Court, "resulted to him (Hidden) to the extent of the purchase money by him advanced."

Beyond the extent to which Hidden was interested in the purchase of the property, by reason of his advancement of a portion of the purchase money, any further promise by Jordan to hold the remainder, or buy the remainder, in trust for Hidden was a *nudum pactum*, without any consideration and absolutely void if ever made.

Suppose A makes a verbal promise to B that he will with his own funds purchase an estate and hold it in trust for B, to be conveyed to him when he pays A the amount of the purchase money, could such a promise be enforced? And if B furnishes a portion of the purchase money would this make any difference in the principle, except as relates to the portion of the land bought therewith?

II. If Jordan did hold all the land in trust for Hidden, still such trust was purely conditional, viz : that Hidden should pay his debt to Jordan on the twenty-sixth day of October, 1859, whereupon, Jordan could make him a deed of the land. Hidden never complied with this condition, and thus the estate became absolute in Jordan.

COPE, J. delivered the opinion of the Court—FIELD, C. J. and NORTON, J. concurring.

This is an action to compel the defendant to convey to the plaintiff a tract of land in the county of Solano. As we understand the case, the plaintiff employed the defendant to purchase the land for him, advancing a portion of the purchase money, and agreeing with the defendant as to the payment of the balance. The defendant paid upon the purchase, in addition to the amount advanced by the plaintiff, the sum of $4,000, and executed his notes for the further sum of $1,780, taking the deed in his own name. The pleadings

are voluminous and somewhat complicated; but the facts, as alleged and proved, show that the money. paid by the defendant was intended as a loan, and that he took the deed merely as security. His position is analogous to that of a mortgagee with a conveyance absolute on its face, and he has no higher or other rights than those of a creditor having a lien upon the property of his debtor. The evidence establishes conclusively the relation of debtor and creditor between the parties, and this relation created at the inception of the transaction determines its character forever afterwards. The proof consists entirely of verbal testimony, but the facts are clearly made out, and it would be grossly inequitable to deprive the plaintiff of the fruits of the purchase. The Court below held that he was entitled to an undivided interest in proportion to the amount of money which he had paid, and decreed a resulting trust in his favor to that extent. We think he is entitled to the whole land, and the conclusion arrived at by the learned Judge who decided the case, seems to have been based upon the pleadings, and not upon the merits of the controversy. The complaint was filed in November, 1858, and the summons issued on the thirteenth of January, 1859, and on the seventeenth of the same month a supplemental complaint was filed setting up certain matters occurring subsequently to the filing of the original. It is alleged in the supplemental complaint that on the third of January, 1859, the plaintiff tendered to the defendant the amount due him for money paid upon the purchase, and that he refused to receive the same, etc. The defendant answered to both complaints, but the Court, deeming the supplemental complaint to have been improperly filed, refused to consider it, and disregarded the evidence adduced in support of it. The objection was not taken by the defendant, but the case throughout, so far as the parties are concerned, was conducted upon the understanding that the supplemental complaint constituted a part of the. pleadings. Under these circumstances, we think the .Court had no right to reject it, or disregard the evidence, but should have treated it as the parties had treated it, as properly in the case. As the matters involved in this branch of the controversy were not passed upon, they are not now before us for consideration, and the most that we can say is that they ought not to have been excluded.

Hidden *v.* Jordan.

The counsel for the defendant relies upon the statute of frauds, and contends that in the absence of a written agreement or memorandum, the facts stated are insufficient to charge the defendant as a trustee.    Admitting, however, that there is a resulting trust, as decreed by the Court below, he claims that an agreement resting in parol merely cannot be given in evidence to establish a trust as to the balance of the land.    It is clear that to the extent of the purchase money paid by the plaintiff, the case falls within the doctrine of resulting trusts, and trusts arising by implication . of law are expressly excluded from the operation of the statute.    " Where," says Story, " a man buys land in the name of another, and pays the consideration money, the land will generally be held by the grantee in trust for the person who so pays the consideration.    This, as an established doctrine, is now not open to controversy.    The clear result of all the cases, without a single exception, is that the trust of the legal estate, whether freehold, copyhold, or leasehold— whether taken in the names of the purchaser and others jointly, or in the name of others, without the purchaser, results to the man who advances the purchase money.    This is a general proposition, supported by all the cases, and there is nothing to contradict it." (2 Story's Eq. sec. 1,201.)    It seems formerly to have been doubted whether a resulting trust could be sustained, where only a part of the consideration was paid by the person seeking to enforce the trust.    In *Crop* v. *Norton* (9 Mod. 233) Lord Hardwicke held that it could not; but this is the only authority we have been able to find to that effect, and there are several English as well as American cases to the contrary.    The English cases are referred to by Mr. Chancellor Kent, in *Botsford* v. *Burr*, (2 Johns. Ch. 404) and he comes to the conclusion that payment of part of the consideration carries with it a proportional interest in the land.    This we understand now to be the settled rule, and it appears to us to be the logical and necessary result of the principle upon which trusts of this character are maintained.    The second point suggested is one of more difficulty, but we think that as the plaintiff advanced a portion of the purchase money, the whole transaction is open to inquiry. He parted with his money upon the faith of his engagement with the defendant, the latter receiving it, agreeing to act as his agent

and purchase the land for him.  The statute was intended to prevent frauds, and not to encourage and sustain them, and in matters of trust and confidence, where there has been a violation of good faith, no protection is afforded by it.  In *Bartlett* v. *Pickersgill,* (2 Eden, 515) it was held, that a verbal agreement by the defendant to purchase an estate for the plaintiff could not be given in evidence to establish a resulting trust.  But Lord Keeper Henley, in the opinion delivered, said : " If the plaintiff had paid any part of the purchase money, it would have been a reason for me to admit the evidence."  This is precisely the case at bar, and the principle at the bottom is, that the party having paid his money in consideration of the agreement, it would be a fraud in the agent to refuse to carry it out.  The fact of the agency is a material circumstance, and in *Lees* v. *Nuttall* (1 Russ. & M. 53) that fact alone was regarded as sufficient, no money having been paid, and nothing appearing but the agency and the purchase.  This decision goes further than it is necessary to go in the present case—further, perhaps, than the general current of authorities upon the subject—and is not easily reconciled with the decision in *Bartlett* v. *Pickersgill.*  It may be said in reference to the decision, however, that the agent had not been employed to obtain a conveyance, but to make a contract for the purchase, the conveyance to be made to the principal.  In becoming himself the purchaser, he had violated the confidence reposed in him and committed a fraudulent breach of trust, to the prejudice of his employer, inflicting a wrong which the Court considered itself called upon to redress.  Undoubtedly the ground taken was that of fraud, and in view of the particular circumstances of the case, it would be going a great way to·affirm with certainty that the decision was wrong in principle.  The same rule was applied in *Taylor* v. *Salmon,* (4 M. & C. 134) where an agent who had been employed to procure a lease of certain mines had taken the lease in his own name.  The Lord Chancellor, in deciding the case, said : " If Salmon, at the time when he entered into the agreement with Lord Dunnalley, was acting as the agent of the plaintiff, Taylor, in negotiating for the lease, it is not material whether at that moment he intended that the agreement should be for the benefit of the plaintiff, or for his own ; because in either

case the plaintiff would be entitled, as against him, to the benefit of the contract." Judge Story, in *Jenkins* v. *Eldridge*, (3 Story C. C. 181) says, that " the rule in equity always has been, that the statute is not to be allowed as a protection to fraud, or as a means of seducing the unwary into false confidence, whereby their intentions are thwarted, or their interests betrayed." He cites the case of *Montacute* v. *Maxwell*, (1 P. Will. 618) where it was said that " in cases of fraud, equity would relieve even against the words of the statute ; but where there is no fraud, only relying upon the honor, word, or promise of the defendant, the statute making those promises void, equity will not interfere." In respect to that case, he says : " The case itself seems originally to have stood upon a peculiar ground, that marriage is not a part performance to take the case out of the statute, contrary to the common rule in other cases within the statute ; and has been so understood by subsequent Judges. In its general language, the case affirms the doctrine that fraud takes the case out of the statute, even in cases of agreements in consideration of marriage. The other language, that it is otherwise where there is no fraud, but reliance is placed solely upon the honor, word, or promise of the party, must be limited to cases of marriage, and certainly is inapplicable to cases where there has been a part performance or execution of the agreement on the other side." This, however, resolves itself into a matter of fraud, for the distinct ground upon which Courts of Equity interfere in cases of part performance is, that without such interference one party would be enabled to practise a fraud upon the other. The same learned Judge so declares in his work on equity jurisprudence, and adds that " it could never be the intention of the statute to enable a party to commit such a fraud with impunity." (2 Story's Eq. sec. 759.) The rule that fraud takes the case out of the statute is too well settled to admit of doubt, and for the purpose of showing that a fraud has been committed, or is being attempted, parol evidence has always been held to be admissible. The difficulty has been in determining what amounted to fraud in the particular case, and to this difficulty is referable those conflicts of opinion which seem occasionally to have trenched upon the rule itself. The rule, however, is universally acknowledged, and there is no case in which the con-

duct of the defendant was held to be fraudulent that he has been allowed to shelter himself behind the statute. The cases themselves are too numerous for us to attempt even a partial examination of them, nor is it necessary for the purposes of this case that we should do so, for the principle is recognized by all. The defendant is acting in violation of his agreement, and the fact that this agreement related to a matter of trust and confidence, coupled with the fact of the payment of money by the plaintiff, is undoubtedly sufficient to avoid the statute. What the defendant undertook to do was to purchase the land ; not a part of it, but the whole ; not for himself, but for the plaintiff; and what he is attempting to do is to deprive the plaintiff of the benefit of the purchase. This, according to the decision in *Bartlett* v. *Pickersgill,* he might succeed in doing, if the whole of the purchase money had been paid by himself; but as the plaintiff paid a portion of it, he is entitled to have the agreement enforced. The money was paid with the understanding that he was to have the entire estate, and the defendant agreed that he should have it, and became his agent for the purchase, received the money and bought the land. The plaintiff cannot be required to take less than the whole, for that was his bargain ; and to allow the defendant to force him into the position of a joint purchaser, would be to sanction and legalize a fraud. It is true, the rejection of the agreement would not compel him to take a part of the land, for he could sue and recover the money ; but there is nothing in this to relieve the conduct of the defendant from the imputation of fraud. He received the money in trust, agreeing to invest it for the benefit of the plaintiff, and having made the investment, to refuse for his own advantage to carry out the trust, is a fraud of the grossest character. We are unable, in any view of the case, to regard the matter otherwise than a fraud ; and our conclusion is, that the judgment of the Court below should be reversed, and the cause remanded for a new trial.

Ordered accordingly.