## SIMSON v. ECKSTEIN.

To establish title under a deed executed in pursuance of a power authorizing a sale upon notice, as a general rule the giving of the required notice must be proved, and will not be presumed from the execution of the deed.

From lapse of time and acquiescence in the possession of the purchaser the regularity of a sale under a power may be inferred, and a presumption indulged that due notice thereof as required by the power was given.

A recital of a material fact in a deed is binding and conclusive upon the party reciting it, and all claiming under him as privies. This rule applies to a recital of the facts that a notice of sale, essential to the validity of the deed, was duly given.

A recital in a deed executed by a mortgagee in pursuance of a power of sale conferred upon him in the mortgage, binds the mortgagor equally as if the deed were executed by him in person.

Where a deed executed in pursuance of a power is on record and the purcheser in possession, a subsequent grantee of the donor takes with notice, and is bound by a recital of fact in the deed of the donee.

In ejectment the defendant may recover by showing an outstanding superior title in a stranger, without connecting himself with it.

Where the purchase money for land is paid by a person other than the grantee in the conveyance, the former is the real purchaser, and the grantee holds the legal title in trust for him.

Acceptance by the mortgagor of the proceeds of a sale made under a power contained in the mortgage, is a waiver by him of all objections to the sale, and a ratification of the acts of the mortgagee—the donee of the power—in relation to the sale and conveyance, which estops him from contesting their validity.

Simson *v.* Eckstein.

Actual adverse and undisturbed possession of land for a period exceeding the time prescribed by statute for the enforcement of a right of entry, gives to the possessor a right of undisturbed enjoyment equivalent to a perfect title.

In 1853 the defendant took possession of the city lot in controversy under a deed purporting to convey to him the title in fee, in pursuance of a power of sale contained in a mortgage made in 1850, and in good faith, believing himself to be the owner, and claiming so to be against all the world, has since retained actual, manifest possession of the premises. In 1858 the mortgagor executed a deed of the lot to the plaintiff, upon which he relies for a recovery in the present action of ejectment: *held,* that upon his possession alone, without reference to the validity of his title under the deed, the defendant must recover.

APPEAL from the Twelfth Judicial District.

The facts are stated in the opinion of the Court.

*Shafter & Heydenfeldt,* for Appellant.

I.   Under the decisions, it is a matter of indifference, so far as the rights of the purchaser are concerned, whether the notice of sale was given or not.   (*Hayden* v. *Dunlap,* 3 Bibb, 216 ; *Smith* v. *Randall,* 6 Cal. 50.)

No rule should be enforced where the sale is under a power voluntarily conferred by the mortgagor, less liberal than the one adopted where the power is conferred on a Sheriff or master, *in invitum.*   If Ellis sold without first giving notice, an action would lie against him at the suit of Sprague to recover any damages which he may have sustained.

II.   Should the Court consider that it was necessary for the defendant to prove an exact compliance with the terms of the power in the matter of the notice, then we insist that the point was proved *prima facie.*

1.   It was proved directly by the admissions made by Ellis in the deed to Eckstein.

Ellis was made the attorney and agent of Sprague by the power contained in the mortgage.   The agency comprehended the act of sale, the steps antecedent to it, and the giving of a deed to the highest bidder, containing all the customary and necessary recitals. The power established between Sprague and Ellis the relation of principal and agent, and the agency extended to and directly involved all the matters above adverted to.   In performing the last

act comprehended in his agency, Ellis states what he had previously done in the conduct of the particular business intrusted to him, and therein recites the notice which his letter of attorney required him to give. All these matters are obviously *res gestae*—"performed during the continuance of the agency, and in regard to a transaction then depending—*et dum fervet opus*." (1 Greenl. Ev., Secs. 113, 114; Story's Agency, Secs. 139, 452.)

These admissions or recitals of Ellis are virtually the admissions of Sprague, the principal of Ellis, and under a familiar rule of law they bind the plaintiff, a grantee of Sprague by a subsequent deed, if the plaintiff took with notice of the prior deed to Eckstein. ( 1 Greenl. Ev., Secs. 189, 190; *State* v. *Catlin,* 3 Vt. 530; *Denton* v. *Perry,* 5 Id. 382; *Williams* v. *Shackleford,* 18 Ala. 318.)

In *Gray* v. *Gardner* (3 Mass. 400), it was ruled at the trial, that the recitals in an administrator's deed were evidence tending to prove that the notice required by law had been given.

In *Bell, Admin'r of Porter* v. *Barnes* (14 Vt. 307), it was held, that a recital in a deed that the grantors were the heirs at law of a certain person deceased, was, in itself, evidence of the fact, but more particularly so when aided by the presumption arising from long possession. And it is to be remarked, that in that case there was no privity whatever between the parties making the recital and the parties sought to be affected by it.

2. That the required public notice was in fact given, is to be presumed.

First, from the recitals, the lapse of time, coupled with the fact of a continuous and adverse possession of eight years on the part of Eckstein, under the very deed in controversy—manifested of record—by expensive improvements and the annual payment of taxes. To this may be added the acquiescence of Sprague, manifested by his omission to sue, mortgage, lease, convey, or interfere by word or deed, for a period of eight years.

Where a party deduces his title under a special authority, and some of the steps contemplated in the power have been proved, and the grantee has been in possession for a long time, it may be presumed by the jury, and should be presumed by them that all the other steps were taken. (*Pejepscot Proprietors* v. *Rearsom,* 14

Mass. 144; see, also, *Winthrop Gray* v. *James Gardner*, 3 Mass. 398; *Read* v. *Goodyear*, 17 S. & R. 350; *Freeman et al.* v. *Thayer*, 33 Maine, 76; *Bergen* v. *Bennett*, 1 Caines' Cases in Error, 1 Matthews' Presumptive Ev., 194, 197, 199, 202, 203, 205, 220, 273–275, 277, 278, 37, 41–43.)

The case at bar fully ascertains all the conditions of fact upon which the rule proceeds. It is not necessary that the lapse of time should be measured by twenty years, except in those cases where there is no fact except the lapse of time upon which the presumption can be raised, as in the case cited from 33 Maine, 76. But where, with the lapse of time, we have the further fact of adverse claim and occupation, and of uncomplaining, torpid acquiescence, on the part of him who is interested to challenge that occupation, if he has any legal right to do it, a much shorter period than twenty years will suffice.

In the case cited from 17 S. & R. 350, the possession under the tax deed was only of ten years' duration.

In *Attorney-General* v. *Bowyer*, 3 Ves. 714; 5 Id. 303; 8 Id. 273, cited in Matthews' Pres. Ev. 197 : " From time, coupled with other circumstances, a conveyance or release of an equity of redemption was presumed, so as to impress upon the mortgaged premises (which were in the mortgagee's possession) the character of his absolute property, and to bring it within the operation of a will made by the mortgagee, about eight years after a clear recognition of a subsisting interest in the mortgagor."

In the case of *Leents* v. *A. & W. Crispe* (3 Bro. Par. Cases, 111,) a rule to redeem was refused after the mortgagor's acquiescence for six years under a foreclosure by his own consent. The case is cited with approbation in 1 Caines' Cases in Error, 21.

Where " time " stands alone, unaided by corroborative facts, there may be a propriety in fixing the period by an arbitrary limit. The maxim, *ex diuturnitate temporis, et cet.*, proceeds upon a case of this degree of meagerness. But when with " time," we have an open and hostile possession, coupled with an acquiescence that utters no word and makes no sign, then " time " may very well be shortened in view of the weight of the facts with which it is allied. The rule that tolerates the introduction of these presumptions is not

an arbitrary one.   It does not force the understanding, but obeys it; and the clear behest of the understanding is, that time may be abridged when the facts before alluded. to are found, without weakening the natural force of the presumption.   It is not unworthy of consideration, that periods short by English and eastern measurement are relatively long periods here.   See *Green et al.* v. *Covillaud* (10 Cal. 317), in which a question of "time" is discussed, in connection with California necessities and tests.

III.   But the deed made by Ellis to Eckstein, as the attorney of Sprague, has been ratified by Sprague.

The deed is sufficient upon its face, and the existence of the power is proved.   If no power, written and sealed, had been produced, there might be a question, perhaps, as to whether Sprague could ratify effectually, except by deed.   But as the papers are complete, and as the alleged defect is a matter lying in averment, a ratification by Sprague may be proved *in pais*.

A ratification by him will be argued on two grounds, complexionally different, but substantially the same:

1. By his passive acquiescence in the sale, and in the open and notorious exercise of the rights, for eight years, which Eckstein supposed he had acquired under it.

We deem it unnecessary to collect and exhibit the cases bearing upon the point now under discussion.   The doctrine is at once stated and illustrated in Matthews on Presumptive Evidence, 277.

" The confirmation of a deed by a third person, or his consent to it, is likewise presumed after long, unmolested enjoyment.   Thus, if a parson conveys away a part of his glebe, the conveyance, after a great lapse of time, with possession under it, will be taken to have been confirmed, as the law requires, by the patron and ordinary." (Mat. Pre. Ev. 277.)

2. But Sprague signified his acquiescence in the sale and deed, in a manner still more significant and decisive.   The purchase money paid in by Eckstein was applied on the mortgage debt, and with Sprague's knowledge, and by a piece of positive conduct on his part he thereafter claimed and had the benefit of it.

The record proves, as against Sprague, that he knew of the mortgage sale in question, and that he claimed and received the benefit

of the money paid in by the defendant.    The offer of judgment itself, when read in the light of the *res gestœ*, contains a written recognition and ratification of the sale.    (*Blood* v. *Goodrich et al.*, 9 Wend. 525 ; *Whitney* v. *Sprague*, 2 Pick. 198 ; Story's Agency, Secs. 252–260 ; *Wright* v. *Whitehead et al.*, 14 Vt. 268 ; *Treevers* v. *Creeve*, Cal. Jan. Term 1860 ; *Holland* v. *City of San Francisco*, 7 Cal. 361 ; *Qui sentit commodum*, etc., Brown's Maxims, 449.)

IV.    Simson is in no better position than Sprague would be, were he plaintiff, for Simson bought with notice in fact.    (*Hunter* v. *Watson*, 12 Cal. 363 ; *Smith* v. *Dall*, 13 Id. 510.)

*E. W. F. Sloan*, for Respondent.

I.    In case of sale under a power, " the regularity of the sale is to be made out as a part of the purchaser's title, and if irregular, he takes nothing by his deed."    (*Jackson ex dem. Rogers* v. *Clark*, 7 Johns. 226.)

No title passes, unless all the essential requisites of the power are complied with.    If the power authorizes a sale of the whole land, or such part as may suffice to discharge the installments then due, a sale for the payment of installments due and to become due, is void.    (*Ormsby* v. *Larascon*, 3 Litt. 404.)

There may be cases in which a conveyance by trustee, attended with some irregularity, will not be considered as void in law.    The entire legal estate being in the trustee, his deed may be sufficient to transfer that estate to another ; and whilst circumstances might induce a Court of Equity to set it aside, or enforce the trust against the vendee, yet the deed might be regarded as good in law to pass the estate.    But it is not every conveyance made by a trustee that will be upheld in law ; and generally a special authority must be pursued.    (*Denning* v. *Smith*, 3 J. Ch. 344 ; *Berger* v. *Duff*, 4 Id. 369 ; *Sherman* v. *Dodge*, 6 Id. 110.)

In the case at bar, the mortgagee in attempting to convey the entire estate in extinguishment of the mortgage, if it may be so called, acts under a mere power, and must have complied with all that is required by the terms of the instrument creating that power, in order to render the conveyance legally operative.

1. There is no proof that the sale was made by or under the immediate superintendence of the mortgagee, or that ten days' public notice had been given.

The deed from Ellis to T. Sprague contains a recital to the effect that notice of the sale had been published ten days in the *Alta California,* but there is no proof of the fact. There is another recital which is demonstrably untrue in the same instrument. The recitals, however, are not evidence upon the objection under discussion. It is not even pretended on the other side, that there is any direct evidence of the publication of notice.

2. The propriety of allowing a mortgagee, who is himself the creditor, to execute the power of sale has, upon general principles, been often doubted, and, in some cases, expressly denied. (*Ford v. Russell,* 1 Freem. Ch. 42.)

The provisions of the Act of 1850, Chap. 142, Secs. 109–111, seem to constitute a decided inhibition against the execution of the power of sale except through the interposition of the Court.

Be that as it may, however, the mortgagee cannot delegate the power to another. The power being coupled with an interest, may be so far regarded a power appendant as to pass by an assignment of the mortgage (*Jenks v. Alexander,* 11 Paige, 619), but the mortgagee cannot commit its execution to another person, unless the right of substitution is expressly given. (*Berger v. Duff,* 4 J. Ch. 367 ; *Heyer v. Deaves,* 2 Id. 164.)

II. The recitals in a deed given by the attorney cannot be received as evidence against the principal, upon any general principle or rule of law. Deeds made by public officers and containing certain recitals are, by statute, sometimes made *prima facie* evidence of the facts recited ; but all such statutes are in derogation of the common law, and are limited in their application to the cases therein expressly named.

Where the attorney has a discretion to sell and convey in what manner he pleases, a purchaser in good faith has nothing to do but pay the purchase money and take his deed. So, where his instructions as to the mode of procedure are secret. But where the manner, terms, and conditions of the sale are all distinctly set forth in the written letter of attorney, the purchaser is bound at his peril

to see that there has been a compliance, and to prove the fact whenever he claims title under it.

To say that the deed itself is *prima facie* evidence of the performance of all antecedent steps on the part of the attorney in fact, would be a denial of the rule of law which imposes upon the party setting it up the burden of proof.

The time which has elapsed since the date of the conveyance in question can have no material bearing on the point under discussion, except so far as it may have occasioned the loss or destruction of the highest evidence of the facts sought to be established.

In *Gray* v. *Gardner* (3 Mass. 398) and *Pejepscot Proprietors* v. *Ransom* (14 Id. 145), all sources of proof had been exhausted. In the former, the sale had been made by an administrator under the order of a Court, and subject to its supervision and sanction. In the latter, it was made by a municipal officer in the discharge of his official duty, and the vendee had been in possession of the deed, and of the land to which it related, for more than thirty years.

The case at bar is clearly distinguishable from either of those.

In cases of conclusive presumption the rule of law merely attaches itself to the circumstances when proved, and is not deduced from them. It is not a rule of inference from testimony, but a rule of protection. (1 Greenl. Ev. Sec. 32.) Of course, the rule in that class of presumptions does not apply here ; for, if it did, the final act of the agent in giving the deed would be conclusive as to the performance of all precedent conditions.

III. It is said that the deed from Ellis to Isaac Eckstein has been ratified ; 1st, by long acquiescence ; and 2d, by receipt of the purchase money.

The argument on the first ground loses its force when we come to notice the fact, that the appellant is not connected by any derivitive conveyance with the deed from Ellis to Isaac Eckstein. There is no proof that he entered or holds under it. For aught that appears, his possession is adverse to both Isaac Eckstein and respondent.

As to the second ground, there is no evidence that Sprague claimed any reduction of the demand, except what is disclosed by the judgment roll in *Ellis* v. *Sprague & McDougall.*

In that action, Sprague seems to have offered to allow judgment to be taken for the sum of $3,220, with interest from the twentieth of March, 1851.

There is nothing to connect that offer with the alleged sale on the twentieth day of March, 1851, except the mere coincidence that interest was to run from the same day. That circumstance is more than overcome by the great discrepancy between the rate of reduction and the avails of the sale; and hence, what counsel denominates " strong and conclusive presumption," is sought to be fortified by conjecture.

If the offer of Sprague had any reference whatever to the circumstances of that sale, it must have been well understood by Ellis who accepted the offer; the appellant, therefore, had the opportunity of proving the fact directly, by interrogating Ellis on the point. It can hardly be possible that Sprague could have done any act, in 1853, by which he intended to recognize the validity of the sale referred to, when, in fact, the mortgage had been released of record long before. This, it will be remembered, appears from the appellant's own evidence, without any attempt to weaken its effect, or to explain it in any way.

IV. It is said that Simson is in no better position than Sprague. That is not necessarily so. He may be properly chargeable with notice of what was duly recorded. But the mere fact that the appellant was in possession (if such was the fact) at the time of Simson's purchase, was no notice to him of the rights of Isaac Eckstein in that lot, however acquired.

The doctrine of *Hunter* v. *Watson* is, " that the open, notorious possession of real estate, by one having an unrecorded deed for it, is evidence of notice to a subsequent purchaser, of the first vendee's title." The principle seems to be, that the fact of possession directs or suggests inquiries on the part of the intended purchaser, touching the right of the actual possessor. But it does not extend to the title of a stranger. Possession by a lessee has been held to be no notice of his title of the lessor; and *a fortiori*, it cannot be of title in a third person with whom there is no privity.

The whole defense consists of an attempt to establish an outstanding legal title in opposition to the title of the respondent. Of

course, such defense can be made. It is sufficient to show that the right of entry is not in the plaintiff in ejectment. But after he has once made a case by proof of a title in himself, in order to defend the possession by proof of title in another, it must be such a title as would enable that other to recover the possession as against the plaintiff.

CROCKER, J. delivered the opinion of the Court—COPE, C. J. concurring in the judgment.

This is an action to recover possession of one hundred vara lot No. 210, in the City of San Francisco. Both parties claim title under one Sprague, who, on the twenty-sixth day of November, 1850, mortgaged the lot, with several others, to Ellis, to secure a promissory note for $4,000, with interest at five per cent. per month, and due February 26th, 1851. The mortgagor, by the terms of the mortgage, appointed Ellis his attorney in fact, to sell the property, in case of the non-payment of the note, at public auction, after giving ten days' public notice of the sale, and as such attorney, to execute and deliver to the purchasers good and sufficient deeds of conveyance therefor. In pursuance of this authority, Ellis, on the twentieth day of March, 1851, caused the lot in question to be sold, by a firm of auctioneers in the City of San Francisco, at public auction, to Isaac Eckstein, for one hundred and sixty-five dollars, and in pursuance of the sale, he, as the attorney in fact of Sprague, and in the name of the latter, executed, acknowledged, and delivered to the purchaser a deed for the lot, which was duly recorded on the twenty-ninth day of March, 1851. This deed, among other things, recites that the sale had been advertised for ten full days in the *Alta California*, a paper published in the city. The mortgage appears to have been twice canceled on the record, one being dated April 7th, and the other April 12th, 1851. This is the title under which the defendant claims. The plaintiff claims under a deed executed to him by Sprague, bearing date the twenty-first day of April, 1858. The case was tried by the Court, who rendered a judgment for the plaintiff, from which, and from an order refusing a new trial, the defendant appeals.

The evidence shows, in addition to the foregoing facts, that the

defendant, Solomon Eckstein, bid in the lot at the sale, paid the purchase money, and took the deed which was delivered to him. The defendant fenced in the lot in 1853, has occupied it ever since, graded it three or four years before the trial, and has paid the taxes on it.   On the fourth day of February, 1853, Ellis commenced an action to recover the amount due on the promissory note against Sprague, and one McDougall, who was an indorser thereon.   Summons was served on both defendants, and on the seventh day of April, Sprague filed an offer to allow judgment to be taken against him for $3,520, with interest from the twentieth day of March, 1851, at five per cent. per month, which was accepted by the plaintiff, Ellis, and judgment rendered accordingly on that day.   The complaint in this action was filed on the sixth day of June, 1859.

The plaintiff insists that there was no proof that Ellis advertised the sale as required by the power in the mortgage ; to which the defendant replies that no such proof was necessary, and, if necessary, the recital of the fact in the deed to Eckstein is sufficient proof, and if not, that it will be presumed.   It seems to be well settled that in sales of real estate by Sheriffs, it is only necessary to prove their power to sell by producing the judgment and execution.   (2 Phillips' Ev., C. H. & E.'s Notes, 364.)   And it is not necessary to show that notice of sale had been given as required by the statute, it being considered as merely directory.   (*Smith* v. *Randall*, 6 Cal. 50 ; *Hayden* v. *Dunlap*, 3 Bibb, 216 ; *Hanson* v. *Barnes' Lessee*, 3 Gill & Johns. 359.)   We see no good reason why the same rule should not apply to deeds executed by private individuals under a power, but it seems to have been decided otherwise in several cases.   (*Jackson* v. *Clark*, 7 Johns. 226 ; *Ormsby* v. *Tarascon*, 3 Lit. 404 ; *Denning* v. *Smith*, 3 J. Ch. 332 ; *Sherman* v. *Dodge*, 6 Id. 107.)

Though such is the general rule, it has often been qualified and controlled by circumstances.   Thus in *Bergen* v. *Bennett* (1 Caine's Cases, 16), it was held by Justice Kent, that after a mortgagor had lain by for sixteen years, he should not then be permitted to come in and question the legality of the notice under which the property had been sold, and every presumption was to be made in favor of the notice.   In that case a less time than that fixed by the

Statute of Limitation of New York was held to estop the party, while in the present case the time during which the mortgagor has lain by without questioning the regularity of the sale far exceeds the time fixed by our statute.   So in *Gray* v. *Gardner* (3 Mass. 399), where the real estate of an intestate had been sold by the administrator, it was held that a great lapse of time before the legality of the sale was questioned, the acquiescence of the heirs, and evidence of the publicity and fairness of the sale, were held to be strong circumstances to prove that the sale was regular, and that it had been duly advertised.   Lapse of time and acquiescence in the possession of the purchaser, have been held sufficient to raise presumptions in favor of the regularity of even tax sales.   (*Pejepscot* v. *Ransom*, 14 Mass. 145 ; *Read* v. *Goodyear*, 17 S. & R. 350 ; *Freeman* v. *Thayer*, 33 Maine, 76.)   In the present case, Ellis acted as a duly authorized agent of Sprague, in selling the property and making the deed, and the presumption is that he duly and faithfully performed the duty required of him.   (1 Phillips' Ev., C. H. & E.'s Notes, 604.)   This rule extends to every man, both in his official and private character.   So, too, it is presumed that a deed of a trustee, having power to convey upon a certain contingency, was not given until after the contingency happened (*Morrison* v. *McMillan*, 4 Lit. 210), and it is generally presumed that a trustee has faithfully executed his trust (*Shilknecht* v. *Eastburn*, 2 Gill. & Johns. 115).   So, long acquiescence by one, in the adverse enjoyment of a right by another, leads to the inference that the former has parted with it in a legal form ; and in time, may lead to the presumption of the necessary instruments of assurance, or of the requisites to make existing assurances valid against him. (1 Phillips' Ev., C. H. & E.'s Notes, 609.)   Under a deed from executors authorized to sell the land at public auction, the deed is sufficient without showing that the sale had been publicly made, for the Court will presume that the executors had done their duty, and had sold in pursuance of the will.   (*Turnipseed* v. *Hawkins*, 1 McCord, 272.)   So, after a great lapse of time, the posting of advertisements necessary to the regularity of a proprietary meeting, may be presumed.   (*Society for Propagating the Gospel* v. *Young*, 2 N. H. 310.)   So, of a deed made by an attorney in fact; long

acquiescence of the principal in the possession under the convey-
ance is evidence that the conditions on which the attorney was to
make the deed had occurred, and that he did not transcend his
power. (*McConnell* v. *Bowdry's Heirs*, 4 Mon. 395.) So, long
possession under a deed made by an attorney, the power itself may
be presumed. (6 Martin, N. S. 153.) In some peculiar cases
this doctrine of acquiescence has been held to bar a party of most
important rights, in very short periods of time; thus an acquies-
cence of nine years in a mining case was held sufficient. (*Pren-
dergast* v. *Turton*, 1 Younge & Coll. Ch. Cases, 98.) So, of a
delay of two years. (*Walker* v. *Jeffreys*, 1 Hare, 341; *Birming-
ham Coal Co.* v. *Lloyd*, 18 Vesey, 515.)

Again, the deed recites the fact that the notice of the sale was
duly advertised, and this, it is insisted, is evidence of the fact. A
recital in a deed of a material fact is held to be binding and con-
clusive upon the party reciting it, and against all claiming under
him, as privies in blood, in estate, or in law. (1 Phillips' Ev., C.
H. & E.'s Notes, 473, Note 130; 2 Id. 574, Note 476; *Osborne*
v. *Endicott*, 6 Cal. 153.) In this case the recital in the deed of
Sprague, by his attorney in fact, to Eckstein, is made by him as the
grantor, and it is therefore binding upon him and the plaintiff who
claims under him by privity of estate. It is considered as an
admission on his part, which the law will not allow him, or those
claiming under him, to deny, and it applies very appropriately to
the recital of a fact, like the present, which is supposed to be
peculiarly within his own knowledge, or the knowledge of his attor-
ney who is acting for him. In such case it has been held to be a
covenant of the existence of a recited fact. (2 Cal. 575, Note
476.)

The fact that this recital, admission, and representation of the
publication of the notice, was made in a deed executed by Sprague's
agent and attorney, can make no difference, and it is equally as
binding upon him as though he had himself executed the deed. It
was a representation and admission by the agent respecting the
subject matter of the agency, within the scope of his powers as
agent, made at the time, and in fact constituting a part of the *res
gestæ*, and therefore is binding upon the principal. (Story on

Simson *v.* Eckstein.

Agency, Secs. 134, 135.) And it has been held that even the fraudulent or negligent statements, misrepresentations, and concealments of the agent will have the same effect, in many cases. (Story on Agency, Sec. 139.) If the recital in this case is not true in fact, and the principal has been injured thereby, he may have a remedy against his agent; but a Court of Equity will not permit him, or those claiming under him, to controvert or vitiate his own deed, and thus perpetrate a fraud upon an innocent purchaser, who bought and paid his money in good faith, relying upon the recitals in the deed as evidence of the validity of his title, and who has thereby been induced to expend money in the improvement of the property and the payment of taxes thereon. The plaintiff occupies no better position than Sprague. Eckstein's deed was duly recorded, and he had full notice of the deed and its recitals, as well by the record as by the actual possession of Eckstein.

It is objected, however, that the defendant, Solomon Eckstein, did not connect himself with the title of the grantee in the deed, Isaac Eckstein. It can make no difference, as far as concerns the present action, whether he did or not, for it is only necessary for him to show that the plaintiff is not entitled to the possession of the property, and this he has done by the deed from Sprague to Isaac Eckstein. This is sufficient to defeat the plaintiff's action. But he has gone further, and proved that he was in fact the real purchaser, that he paid the purchase money, that the deed was delivered to him, and that he has taken and held possession under it. These facts vest a clear, equitable title in him, and show that the grantee named in the deed is a mere naked trustee, holding the legal title for his use. When a man buys land in the name of another, and pays the consideration money, the land will generally be held by the grantee in trust for the person who so pays the consideration money. This principle has its origin in the natural presumption, in the absence of all rebutting circumstances, that he who supplies the money means the purchase to be for his own benefit, rather than for that of another; and that the conveyance, in the name of the latter, is a matter of convenience and arrangement between the parties, for other collateral purposes. (2 Story on Equity, Sec. 1201; *Hidden* v. *Jordan,* 21 Cal. 99; *Wells* v. *Robinson,* 1½ Id. 141; *Osborne* v. *Endicott,* 6 Id. 153.)

The fact that Sprague admitted on the record, in the suit on the note, that there was due on the note the sum of $3,520, an amount less than its face, with interest from the twentieth day of March, 1851, that being the very day of the sale of the mortgaged property, together with the fact that no foreclosure of the mortgage was asked for in that suit, affords very strong presumptive evidence that he knew of the sale of the property mortgaged, and of the application of the proceeds of the sale upon the mortgaged debt. There can be no doubt that the purchase money paid by Eckstein was applied on the mortgage debt, and was thus virtually received by Sprague. We consider this receipt by him of this purchase money as a clear waiver by him of all objections to the sale, and as a virtual ratification or acquiescence in the acts of his agent in relation to the sale and conveyance. He certainly has no right to retain the purchase money and at the same time repudiate the deed for which the money was paid. He has no right to both the land and the money. He who asks equity must do equity. By receiving the money he elected to affirm the sale, or he thereby at least waived all objections to it, and he is estopped from afterwards contesting its validity. (*Forrestier* v. *Bordman*, 1 Story, 52; *Palmerston* v. *Hexford*, 4 Denio, 166; *Pickett* v. *Pierson*, 17 Vermont, 478.)

Again, the defendant in this case has held the actual, adverse, and undisturbed possession of the premises for more than six years, a period exceeding the time prescribed by our statute for the enforcement of a right of entry, and his possession cannot, therefore, be disturbed. "As a general doctrine, it has too long been established to be now in the least degree controverted, that what the law deems a perfect possession, if continued without interruption during the whole period which is prescribed by the statute for the enforcement of the right of entry, is evidence of a fee. Independent of positive or statute law, the possession supposes an acquiescence in all persons claiming an adverse interest; and upon this acquiescence is founded the presumption of the existence of some substantial reason (though perhaps not known) for which the claim of an adverse interest was forborne. Not only every legal presumption, but every consideration of public policy requires that this evidence of right should be taken to be of very strong, if not of

conclusive force." And the same doctrine is acted upon in a Court of Equity. (Angell on Limitations, 396, 399, 401; *Grattan* v. *Wiggins, ante.*) In the present case, the defendant took possession of the premises in good faith, in the full belief that he, through his trustee, had a good title to the property, and with the intention to hold it against the whole world. The deed under which it was taken purported to convey the title in fee, and this possession was not only actual by a substantial inclosure, but it was adverse to Sprague and all claiming under him, and the rest of mankind. It was adverse in its inception (though we do not think that fact essential), and has so continued ever since. We think it clear that these facts constitute a full defense to the claim of title sought to be enforced by the plaintiff in this action. The Court therefore erred in rendering judgment for the plaintiff, and under the facts should have rendered judgment for the defendant.

The judgment is therefore reversed, and the Court below is directed to enter a judgment for the defendant for his costs.