Judge Marshall
delivered the Opinion of the Court.
This is an appeal by Sowder and Myers; from a judg* ment in ejectment obtained against them, on the joint and several demise of McMillan’s heirs &c. The suit was tried in the Scott Circuit Court,' to which it had been removed by change of venue; and various opinions of the Court, delivered in the progress of the trial, having been excepted to, the whole case comes up on á bill of exceptions to the refusal of the Court to grant a new trials 1
On the trial, the plaintiffs read in evidence a patent; dated in 1786, granting fourteen thousand acres of land to James Moody; and for the purpose of proving its boundaries, and that the tenement in possession of the defendants was within them, offered to read the plat and report of a survey, purporting to have been made by William C. Johnson, under an order of survey in this cause* This was objected to by the defendants, but admitted by the Court; and the propriety of its admission presents the first question to be considered.
It appears that, the declaration add notice—having been served on Sowder, the tenant in possession—were filed at the May term, 1830, of the Grant Circuit Court* At the same term, an order was made, in the usual form, directing William C. Johnson, to survey the land in controversy. In June following, before the common order was served, or any defendant made, and without notice to the tenant in possession, Johnson made the survey of the fourteen thousand acres, except the last line, which was afterwards run. It was proved, however, that on the night of the day on which the survey was commenced, Myers, who was afterwards made a defendant, was with the surveying party. But, admitti ng the presump *457 lion thá't he had been with them during the day, it does not appear that he acted, or was recognized as a party, ■or that he claimed, or was permitted, in any manner, to 'control or direct the survey. Nor does it appéar that, either then or before, he had any notice that it was intended to be used as evidence in 'this case, or that it was authorized by an order of Court; nor, indeed, that he had, at that time, any interest in the controversy. There was no real defendant to the suit when the order was made; and when the sUrve.y was executed, there was no party except the plaintiffs, who could, as provided for by the order, give directions to the surveyor. • His Casual presence,-under these circumstances, did not make the plat and report evidence, as against him, of the facts stated in them. And as Sowder, íhé teiiant in posses*sion, had no notice, and was not present, they- were clearly no evidence against him, unless made so by consent. (Ewing's Heirs vs. Savary, 3 Bibb, 236.)
Corisérit that a surveyor’s report muy be read in •One case, does not make it evidence ift another, especially, when it does not appear that thesa against whom it is offered, were parties to thecoa» sent-.
The consent order made in another case, and in an■Other Court, and, so far as appears, between different parties, in which it was agreed by the parties to that suit, that this report should be read as evidence in that suit, is •obviously insufficient to make it admissible as evidence in this suit. If the consent be considered as amounting to such a recognition of the report, as to make it evidence in another case between the same parties, these defendants do not appear to have been parties to the ■consent, and cannot be affected by it. We are, therefore, of the opinion, that the,Circuit Court erred in perWiitting the report to go to the jury as evidence. And, as the other testimony, conducing to prove that the-tenement in contest was included within the boundaries of Moody’s patent, was far from being conclusive, and might have been deemed by tiie jury insufficient to establish the fact, the erroneous admission of the report, was a substantial injury to the defendants. And having been excepted to at the time, as well as included in the grounds for a new trial, is a sufficient ground for reversing the judgment. Craddock vs. Craddock, 3 Litt. 78.
But, although for this error, the judgment must be reversed, it is necessary to decide several other questions *458 preseñted by the assignment of errors, and which wiii probably arise upon another trial.
of both parties to iroversy res^upon possession Imdbgññywrritten evidence of title.
The extent of a tenant s possession depends upón the intentions with which he entered, and did other acts with a view or enlarging iiia boundamutters ^foi^the decision of a ju>y‘
Where a tract of land, extending over county lines, includes land in two or more counties, the possession acquired by an entry upon the tract, is limited to the county in which the entry is made: no possession in any other county is thereby acquired. The recovery in one county cannot e“end ¡nt0 other. There gentry anTa separateaetion in each county'
*458 The lessors of the plaintiff shows nó documentary evidence of title in themselves, as derived from Moody’s patent, or any other; but attempted to prove that, they had been in' possession of the land in contest before the defendants, or those under whom’ they claim, entered upon it; and, as the defendants showed no title on their part, a reco’very is claimed by the plaintiffs, on the sole ground of a prior possession short of twenty years.-
Moody’s patent was used for the purpose of showing , , . i i , , , the extent to which the lessors claimed to have been possessec¡. They proved that they claimed under that pa- . ,J * . . . , , , , , . 1 tent, all ol the land included m it. And they claim to pave been possessed to the extent of the patent boun1 ■ . • r dary, and therefore of the land in contest* by reason of entr7 and other acts of a certain Tyree Oldham, done upon the land, in 1820 and 1821, as their agent, and afterwards, as their lessee.
Whether those acts were sufficient to give them an exa tended possession, depends in a great measure, as has off ten been decided, upon the intent and purpose with wirich they were done; and we think the instructions given by the Court, are liable to the objection that they ascribe to these acts the effect of gaining a possession to the extent of the boundary claimed, without distinctly submitting to the jury, the question of intention, as one upon which the extent of possession depended: and in this we think the instructions were erroneous.
In ascribing to the acts of Oldham the effect of gaining a possession to the extent of Moody’s boundary, the Court also decided a question of law of great importance, arising on the following facts. The land included in the patent of Moody, is situated on the confines of the two counties of Pendleton and Grant, and extends into both. The entry and other acts of Oldham, as well as his pedis possessio, appear to have been confined to the county of ‘Pendleton; while the tenement occupied by the defendants, and for which the action was brought, is situated in the county of Grant. And unless, as a matter of law, the possession of that part of the land which lies in
*459 Grant county, could have been acquired by an entry upon that part which is in Pendleton, the Court erred in each of the instructions, which concluded by informing the jury, that the law was for the plaintiff, or that they should find for him. For in none of these, is the question whether any act had been done in the county of Grant, which might gain a possession in that county, submitted to the jury, as one of the questions of fact, upon which the conclusion is based.. And, as there was in fact no proof conducing in the slightest degree, to show that any such act had been done in the county of Grant, the instructions must be understood as deciding -not that there had been any such act, but that the acts done in Pendleton, were of themselves sufficient to gain a possession in Grant.
In this opinion we think the Circuit Court erred. It is an ancient principle of the law upon this subject, that an entry to recontinue a seizin, must ensue the action which is appropriate for the same purpose; and there-> fore if the lands are in several counties, there must be an entry in each county. Co. Lit. 252, b. Hord vs. Walker, 5 Litt. Rep. 22. It is also said by Littleton, that if a man make a deed of feoffment of lands in divers counties, it behoveth to have livery of seizin in every county. Sect. 61, 50, a. And in note (2) by Plargrave upon that section (2 Thomas’ Coke, 337, note 11,) is to be found an extract from Lord Hale’s manuscripts, in which, on the authority of Dyer, 246, and 22 H. 6, 10, it is laid down, that “if a manor extend into two coun-. ties, livery .of that part of it which is in one county, does not pass that which is in the other county. And so it- is with respect to disseizin.”
The decision of the Circuit Court on this question,, seems to be inconsistent with these authorities. And although some of the reasons, on which the principles referred to were adopted, may have ceased, or may never have existed in this country, others still remain; and a sufficient ground for a substantial adherence to them, is that they are so inteiwvoven with other principles on which the doctrines of real property, and the remedies relating to it, depend, that to disregard them on this ion *460 mediate subject, would not only break in upon the harmony of the law, but would scarcely fail to produce difficulty and embarrassment in the future application of any new principle which might now be asserted. The same principles apply to the entry, or any other act of the lessee for taking possession under the leas.e (if there were any such acts) and would confine their operation to the county in which they were done.
A mere possession pflan'd gives title as against any trespasser or intruder; & wil( enable a party, who,, having been in the actual possession, has been ousted, to recover, upon his prior possession, withouj title, against jbe intruder who dispossessed him; and the latter can not defend himself by showing on outsjapciing title in a stranger; hulonly,by show lag, that he himself has a title, 0,r gp authority to enter under the title.
A peaceable possession is protected against all, except the true owner: no other irmy disturb it.' The def'tin eject, may defend by showing, that the right is in a third party, and not in the plain-jiff.
The claimant who, instead of resorting to his action, enters upon and ousts the tenant, does not thereby acquire a legal possession, pnd will not be protected against the suit of the prior possessor, nor gain any advantage by his Wrongful entry. If the tenant is ousted wrongfully, and brings his action to regain the possession, & the def’t (who ousted him) sets up a title or right of entry in himself, the pl’tf may rebut and ctefeat that defence by showing a paramount title in a third party
*460 By this, view of the law, the right'of recovery, so fan as it depends upon the facts appearing in this record, is entirely cut off. But as, upon another trial, there may be some proof that the lessors of the plaintiff have had possession of the land in contest, it may not be inappropriate to make some investigation of the leading principles on which the right of recovery, on a mere prior possession of less than twenty years, in our judgment, depends.
It would be difficult to find in modern English cases, or in the most approved treatises on the action of ejectment, any direct authority for the opinion that a re.c.overy can be had in that action, upon the mere naked proof of prior possession in the plaintiff, short of twenty years. But the right to recover upon such proof, against an intruder upon the prior possession, has been recognized by this Court, in the cases of Steele's Heirs vs. Logan, 3 Mar. 394; Campbell vs. Roberts, 3 Marsh. 623, and Fowke vs. Darnall, 5 Litt. 319; and has been practically asserted by the Supreme Court of New York, in many cases. Jackson vs. Hazen, 2 John's Repts. 24; Jackson vs. Meyer, 3 Ib. 398; Jackson vs. Hardin, 4 Ib. 210, and Smith vs. Lorillard, 10 Ib. 355, &c.
It is not our purpose—-if indeed we are now at liberty—to question the general right of recovery, as established by these cases; but to ascertain, as far as may be, its true limits, and the principles on which it stands.
The only British decisions on this point, which are referred to in any of the, cases just cited, are the, cases of Bateman vs. Allen, Croke Eliz. 438, and Rivington vs. Allen, 2 Saunders, 211. In each of these cases, and in the case of Reed and Morpeth vs. Erington, Croke Eliz. 323, the jury found a special yerdict, in which the state of *461 the tille was presented; but as it was found that the plaintiff was in possession, and the defendant entered upon that possession and ousted him, and no title, or authority to enter, was found in the defendant, the Court would not enquire any further into the title, but gave judgment for the plaintiff, without regard to the question, whether, upon the verdict, he had title or not, because the defendant had ejected him without title.
In the case of Bateman vs. Allen (supra,) it being quesr tioned, in argument, whether the plaintiff’s lessors appeared by the verdict to have been in possession, the Court determine that they were in possession, and go on to say that “although they be in as disseizors, their lease to the plaintiff was good, and the defendant without title is not to eject him.” It was contended in the case of Reed and Morpeth vs. Erington (supra,) that upon the verdict, the title (as to a part of the land) was out of the plaintiff, and so the defendant was not guilty of ejecting him. But the Court said this was immaterial, as it was not found that the defendant claimed under those who hac| the title; “and the plaintiff having entered, and the defendant entering upon him, this is an ejectment, for which the plaintiff shall punish him.”
The reasons of the judgment in the case of Allen vs. Rivington, 2 Saunders 211, are not stated in the language of the Court, but iq that pf the Reporter, who says, “the matter of law was never argued, because it appeared in the record, that the lessor of the plaintiff had a priority of possession, an'd there was not any title found in the’defendant,3’ ^And then the priority of possession alone gives a good title to the plaintiff, against the defen, dant, and all the world,’except against the heir of the devisor,” who had the title. This language, taken without reference to the facts of the case, might countenance the idea, that a mere prior possession in the plaintiff, at any indefinite period before that of the defendant commenced, is a good title against the defendant, and against' all the world except the holder of the real or best title, But it appears from the verdict, that the lessor of thq plaintiff' entered, and leased to the plaintiff, and that the defendant, in whoni no title is fouqd, ousted him, Sp *462 that the possession of the plaintiff continued until the defendant entered upon it. It was upon these facts, that the judgment of the Court in favor of the plaintiff, was given. And referring, as we should do, the language of the reporter to these facts, it must be understood to mean that the priority of possession, as it was shown in this case, (that is, a possession continuing until it is wrongfully ousted,) gives title against all except the real owner of the land.
Thus understood, the judgment determined only that the priority of possession was a title in the plaintiff for the purpose of recovering against the wrong doer, and is in effect the same as the preceding cases. The principle asserted by the reporter, that such possession gives title, not only against the wrong doer, but against all the world except the true owner, if considered as expressing the reasons given by the Court for their judgment, is obviously much broader than was necessary to justify the judgment itself. To the extent that it is broader than the question in issue, it is not directly supported by the case, and is not entitled to the 'weight of a judicial authority.
5 The three cases, however strictly construed, estab- } lish, unquestionably, the right of the plaintiff to recover i when it appears that he was in possession, and that the defendant entered upon and ousted his possession, without title or authority to enter. And prove that when the possession of the plaintiff, and an entry upon it by the defendant, are shown, the right of recovery cannot be resisted by showing that there is, or may be an outstanding title in another, but only by showing that the defendant himself, either has title, or authority to enter under the title. It is a natural principle of justice, that ‘he who is in possession has the right to maintain it, and •;'if wrongfully expelled, to regain it by entry upon the •wrongdoer. When titles are acknowledged as separate f.and distinct from the possession, this right of maintain- . ing and regaining the possession, is, of course, subject :!to the exception that it cannot be exercised against the iieal owner, in competition with whose title it wholly ‘fpils, Bqt surely it is pot accordant, with the principles. *463 of justice, that he who wrongfully ousts a previous possession, should be permitted to defend his wrongful possession against the claim of restitution merely by showing that a stranger, and not the previous possessor whom he has ousted, was entitled to the possession. The law protects a peaceable possession, against all except him who has the actual right to the possession, and no other can rightfully disturb or intrude upon it. While the peaceable possession continues,'it is protected against a claimant in the action of ejectment, by permitting the defendant to show, that a third person, and not the claimant has the right. But if the claimant, instead of resorting to his action, attempt to gain the possession by entering upon, and ousting, the existing'rpeaceable possession, he does not thereby acquire a rightful or a peaceable possession. The law does not protect him against the prior possessor. Neither does it indulge any presumption in his favor, nor permit him to gain any advantage by his own wrongful act. He must therefore show his right to enter; and although the prior possessor is compelled to assume the attitude of plaintiff, in order to regain his possession, he may resist the defendants evidence of a right to enter, by showing the'right to be in another. For he can no more be deprived by the defendants wrongful act, of the presumptions and rights attaching to a peaceable possession, than the defendant can^acquire them.
The alieflee of & trespasser or intruder upon land, stands upon the same footing as bis alienor (supra; ) and the condition of each successive alienee is the same; they are all subject to the same liabilities in favor of the tenant who was ousted, and whose right to be restored, continues till it is barred by the time that bars a right of entry.
In each of these three cases, it appears that the action was brought by the person who was actually ousted and against the individual who actually ejected him. And the question arises in the present case, as it must in any general investigation of the subject, whether the right of action and the principles applicable to it, as above stated, exist and can be applied when the prior possessor does not bring his suit against the actual wrongdoer, but against others acquiring the possession under him. And although in the two. first of the cases, the right of recovery seems to have been placed by the Court principally on the ground of the defendants being a trespasser, we are of the opinion that, in the present State of the law, the action must be considered as being *464 maintainable, and on the same principles, when brought against the alienees of the trespasser, as when brought against the trespasser himself.
To enable a plt’f to maintain an prior^ossessiont he must have been ousted by the defendant or one under whom the def’t holds; and whose entry was a. trespass tljioh the prior possession of the plaintiff, and for which he could maintain trespass’.
*464 If it were not so, thén the actual trespasser might, by an immediate alienation or transfer of the possession, confirm his own wrongful act, and defeat the right of the píióí peaceable possessor’. Moreover, although^ by the ancient common law, a disseizee could not enter upon the alienee of the disseizoz', after a year and a day, yet from a regard to convenience and justice, and in consequence of the more perfect recognition of the distinction between title and possession, and of the separate existence of each, this principle has been long since abandoned, and the right of the disseizee to enter upon the alienee or feoffee of the disseizor,'at any time within the general limitation of the right of entry, fully admitted. Coke Lit. 337 b. 2 Thomas’ Coke, 20.
The principle asserted by Saunders, in the case above cited, that the pi’ior possession gives title (i. e. authoi'izes a recovery,) against all except the true owner, is also entitled to great weight on this question, whether it was his own opinion, or that of the Court. And so far as it is entitled to weight, it proves not only that the action is maintainable against the alienee of the intruder, but that he cannot defeat it by showing an outstanding title in anothez', but only by showing title or authority to enter. Besides, it seems reasonable and just, that he who comes in under a trespasser or intruder, should be allowed no higher pzivileges againsFthe injured person.^ihan-lhe intruder himself. And that a possession acquired by wrong, should be deemed to be infected by that wrong, and consequently subject to the same disadvantages in a contest with the prior possessoz’, so long as it continues in the hands of the wrong* doer himself, or those claiming under him, and by his act until it is fz-eed from all question by the lapse of time.
But according too ur view of the cases referred to, and of the pz'inciples on which they rest, it is essential to the maintenance of the action upon no other title than that of prior possession, that the prior possession must , _ . , , . . ,, . . have been removed by the entry or intrusion ot the de *465 fendant, dr those under whom he holds; and that the entry under which the defendant holds the possession, must have been a trespass upon the prior possession. And this we understand to be the principle asserted in the case of Fowke vs. Darnall, 5 Litt. 319; as prevailing, even between the original parties.
From this principle it follows that the prior possessor must have had such a possession, at the time .of the entry of the defendant, or those under whom he claims, as would enable him to maintain an action of trespass for the entry. .But it i's not necessary for us to say, in the present attitude of this case, what facts constitute br are sufficient evidence of such an actual possession.
For the errors above noticed, the judgment is reversed, and the cause is remanded, that a new trial may be had, upon principles consistent with this opinion.