## MARY POLACK *v.* P. McGRATH, J. W. REAY, TIMOTHY DONLAN, AND MARY DONLAN.

VAN NESS ORDINANCE.—The inclosure of a lot in San Francisco by building a fence around it made of posts eight feet apart and five feet high, with two boards nailed on the same, without actual occupation or cultivation of the lot, did not give such possession of the same to the person inclosing as to pass the title to him under the Van Ness Ordinance.

ADVERSE POSSESSION OF LAND.—One claiming to have acquired a title to land by five years adverse possession, need only show that his adverse possession was held by a substantial inclosure, and need not prove occupation, cultivation, or use of the premises.

WHAT CONSTITUTES PRIOR POSSESSION OF LAND.—The plaintiff in ejectment who claims to recover on the ground of prior possession alone, without color of title, must show an *actual* prior possession; and if he shows that he had the land protected by a substantial inclosure, even if he had not improved or lived on it, this

constitutes an *actual* possession. A substantial inclosure is such a fence as a prudent farmer would erect to protect growing crops.

PROOF OF PRIOR POSSESSION.—If the plaintiff in ejectment relies on prior possession alone, without color of title, proof that he had the land inclosed with a fence made of posts eight feet apart, with two rails nailed on, is not sufficient to establish such prior possession.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

Ejectment to recover a lot of land four hundred and twelve and a half feet in length and one hundred and thirty-seven and a half feet wide, being Fifty Vara Lots One, Two, and Three, of Block Two Hundred and Eighty-nine of the Western Addition to San Francisco. The defendants entered into possession of the demanded premises in October, 1862. When plaintiff rested, defendants moved for a nonsuit, because plaintiff had not shown such a prior possession as would enable her to recover in ejectment. The Court denied the motion. Plaintiff recovered judgment, and defendants appealed.

The other facts are stated in the opinion of the Court.

*E. A. Lawrence,* for Appellants. Such a possession as was proved by plaintiff in this case, has been several times held by the Court to be insufficient to maintain ejectment. (*Hutton v. Schumaker,* 21 Cal. 453 ; *Wolf v. Baldwin,* 19 Cal. 306 ; *Lawrence v. Fulton,* 19 Cal. 690.) The mere building a fence is not sufficient. Casual acts of ownership are not sufficient to carry after them the title to the land. (*Lawrence v. Fulton,* 19 Cal. 690.) The case of *Lawrence v. Fulton* was ejectment for land in San Francisco *outside of the lines of the Van Ness Ordinance.* The testimony in favor of plaintiff was much stronger than in this case. He showed a much better possession, accompanied with a *residence on the land* adjoining ; yet he was defeated in the Court below, mainly by the charge, " that to enable plaintiff to recover, they (the jury) must be satisfied that the person under whom he (plaintiff) claimed, had had an actual, *bona fide* occupation, and had subjected the land to his will and control for some space of time ; that mere assertion of title, coupled with casual acts of owner-

ship, is not sufficient." The Supreme Court held this charge to be correct.

*Spencer & Jarboe*, for Respondent. Every act, definite, positive and notorious, which conspicuously manifests the intention of a present appropriation, constitutes the possession, which is sufficient to maintain ejectment against any intruder who has not the better title. What are the acts that are definite, positive and notorious, the law cannot and does not pretend to determine. It—the law—announces the principle, and leaves its application to the varying circumstances of life, and its perpetual change and modification to be determined by a jury, aided and enlightened by an intelligent Judge.

By the Court, RHODES, J. :

It appears from the testimony of the plaintiff's witnesses that Tracy, from whom the plaintiff deduces title, claimed the south half of Block Number Two Hundred and Eighty-nine, in the Western Addition to San Francisco ; that Flint claimed the northern half of the block ; that in 1853 Tracy and Flint jointly inclosed the whole block with a fence ; that the fence was five feet high and consisted of posts eight feet apart and two rails, two by three inches ; that in June, 1862, a cross fence was built which, with other fences, constituted the northern fence of the southern half of the block—the premises in controversy ; that the fences were from time to time repaired as the rails were found down, up to the entry of the defendant's grantor ; that the lots and the adjacent streets were covered with scrub oaks when the fence was built, and have so continued, and that the plaintiff and those under whom she claims have done nothing on the lot besides the building and keeping up of the fences.

There can be no doubt that those acts on the part of the plaintiff's grantors were not sufficient to entitle them to the benefits of the Van Ness Ordinance. They did not have such

an actual possession of the premises as is required by the ordinance to enable them to acquire the title under its provisions. "By actual possession," says Mr. Chief Justice Field, in *Wolf v. Baldwin*, 19 Cal. 306, "as the terms are here used, is meant that possession which is accompanied by the real and effectual enjoyment of the property. It is the possession which follows the subjection of the property to the will and dominion of the claimant, to the exclusion of others, and this possession must be evidenced by occupation or cultivation, or other appropriate use, according to the locality and character of the particular premises. An inclosure, by an ordinary fence, of the premises without residence thereon or improvements, or cultivation or other acts of ownership, is of itself insufficient." (See, also, *Davis* v. *Perley*, 30 Cal. 630.)

The plaintiff does not rely for a recovery solely upon title acquired under the operation of the Van Ness Ordinance, but also contends that she is entitled to recover on the ground of prior possession and the usual legal presumption arising therefrom. In each of the opinions delivered in *Wolf* v. *Baldwin*, the position which was requisite in order to answer the demands of the Van Ness Ordinance, was defined in terms more comprehensive than would be necessary in describing such possession as would be held sufficient when shown by a person claiming the benefits of the Statute of Limitations. Something it was thought was due to the word "actual" as qualifying "possession," and also to the words "occupied and possessed," as they are employed in the proviso to the first section; and the object of the ordinance was kept in view, which was considered to be "to protect actual possessors— parties who were seeking by settlement to build up houses within the city limits, and not migratory squatters or mere land speculators."

Adverse possession may be sustained upon evidence that does not come up to the full measure indicated in that case, as required of those claiming under the ordinance. The party setting up adverse possession, in most cases wherein he prevails, proves that he or his tenants or agents resided upon or

cultivated the premises, or put them to some appropriate use; but in many cases the evidence would be ample without going to that extent. It is possible for him to have a possession which will be held sufficient to sustain his answer to the Statute of Limitations without having devoted the land to any present beneficial use. It is provided by section thirteen of the Statute of Limitations, that " for the purpose of constituting an adverse possession by a person claiming title not founded on a written instrument, judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only : 1. When it has been protected by a substantial inclosure. 2. When it has been usually cultivated or improved. One of the cases mentioned in the eleventh section, in which the land shall be deemed to have been possessed and occupied by the person claiming adversely under title founded upon a written instrument or a judgment or decree, is also where the land has been protected by a substantial inclosure. The statute has in these respects remained in force since its passage in 1850, and the person claiming the adverse possession who shows a substantial inclosure of the premises of which he claims the title, need not prove any further occupation, cultivation or use of the premises.

The difficulty attending the attempt to define possession of lands, or to lay down precise rules by which the sufficiency of a given state of facts to constitute possession may be determined—whether it is such as is required to be shown by a person claiming adversely without color of title, or by one relying on prior possession—has often been experienced and admitted by Courts of the highest standing ; and indeed none but very general rules can be laid down, leaving each case to depend mainly on its own circumstances. All concur in one respect, and that is the only point involved here, taking the case as presented by the plaintiff's testimony, and that is, that the possession must be actual. (See 2 Smith's Lead. Cases, notes to *Nepean* v. *Doe ;* 2 Wash. on Real Prop. 480.)

A difficulty is again encountered in defining actual possession. It is a mixed question of law and fact. The facts being

found or admitted, their sufficiency to prove actual possession is a question of law. In *Jackson* v. *Schoonmaker*, 2 Johns. 234, the defendant proved that the land was inclosed by a possession fence, which was made by trees felled and lapped one upon another, and that the fence had ever since been kept up ; and Mr. Chief Justice Kent said : " The possession fence, as it was termed, which was run around the large tract in 1774, I do not consider as an adverse possession sufficient to toll the right of entry of the true owner, after twenty years. This mode of taking possession is too loose and equivocal. There must be a real and substantial inclosure and actual occupancy, a *possessio pedis*, which is definite, positive and notorious, to constitute an adverse possession, when that is the only defense and is to countervail a legal title." In *Plume* v. *Seward*, 4 Cal. 94, in which the question of prior possession was involved, it was said by Mr. Chief Justice Murray : " From a careful examination of the authorities I am satisfied that there must be an actual *bona fide* occupation, a *possessio pedis*, a subjection to the will and control, as contradistinguished from the mere assertion of title, and the exercise of casual acts of ownership, such as recording deeds, paying taxes," etc. This is followed by remarks which materially qualify and destroy the force of the language cited, and which were wholly unnecessary to the decision of the points involved in the case. We shall not discuss the doctrine advanced in qualification of the more general rule first stated, but will content ourselves with saying that the opinion, in so far as it intimates that the possession of a part of a tract of land marked by distinct boundaries, by the person claiming the whole, will draw after it the possession of the whole tract, is not in accordance with the general rule on the subject, and is opposed by many subsequent cases in this Court. (*Garrison* v. *Sampson*, 15 Cal. 93 ; *Coryell* v. *Cain*, 16 Cal. 573 ; *Hestres* v. *Clements*, 21 Cal. 425 ; *Hutton* v. *Schumaker*, Id. 453.)

The general rule as first stated, without the subsequent modifications or exceptions, very nearly conforms to the doc-

trine of the cases on that subject. The Supreme Court of Pennsylvania, in defining the nature of adverse possession, say, in language often cited for its completeness and accuracy, that it must be " an actual, continued, visible, notorious, distinct and hostile possession." (*Hawk* v. *Senseman*, 6 S. and R: 21.) Wherein, it may be asked, does the actual possession, required in case of prior possession, differ, if at all, from the actual possession demanded in adverse possession? We see no ground for drawing any distinction, and think none exists. The statute has come to the aid of the Court in defining adverse possession, and in the section already cited, has declared, that where the land has been protected by a substantial inclosure, or where it has been usually cultivated or improved, it shall be deemed to have been possessed and occupied by the person claiming adversely, but without color of title. This constitutes actual possession, and perhaps fills the measure of the definition given in *Hawk* v. *Senseman*.

These provisions of the statute were not adopted as rules applicable in cases of asserted prior possession, but there is no difference as to the mode of acquiring or holding the actual possession in the two cases, and the acts that would be required in one case will suffice in the other; so that when the actual possession is shown in support of a claim to prior possession, if there is also proven the claim of title in hostility to that of the true owner, it will amount to adverse possession. The statutory rule 'recommends itself by its simplicity and comparative certainty, and no good reason appears why it should not also be applicable to cases of prior possession.

Under that rule, the inclosure which is relied upon to establish prior possession must be shown to be substantial. The purpose of an inclosure is to protect the land; and to be considered as substantial it must be sufficient to protect the land against the intrusion of cattle—not that it must be so high, strong and close as to preclude the possibility of its being broken, but it should be of such strength as a prudent farmer erects to protect his growing crops. An inclosure that falls short of this serves no other purpose than to mark the

lines of the tract of land, and is of no greater significance or value to prove actual possession than are corner posts or blazed line trees. This is also the doctrine of many cases in this Court. (*Baldwin* v. *Simpson*, 12 Cal. 560; *Wolf* v. *Baldwin*, 19 Cal. 306; *Garrison* v. *Sampson*, 15 Cal. 93; *Hestres* v. *Clements*, 21 Cal. 425; *Hutton* v. *Schumaker*, 21 Cal. 453.)

The fences which constituted the only inclosure of the lots in controversy, admitting that they were erected and maintained as the plaintiff's witnesses stated, fall far short of a substantial inclosure. We are therefore of the opinion that the defendant's motion for a nonsuit should have been sustained.

Judgment reversed and the cause remanded.


SHAFTER, J., concurring specially :

I concur in the judgment on the ground that the plaintiff's evidence had no tendency to prove a *possessio pedis.*


CURREY, C. J., dissenting :

While I am of the opinion that the plaintiff's fence was not of a character sufficient to constitute an adverse possession against the true owner, it was, taken in connection with the other proprietary acts exercised by the plaintiff and her grantors in respect to the property, sufficient, in my judgment, to establish her possession and right of possession as against tortious intruders; therefore I dissent from the conclusion to which a majority of the Court have come.


SAWYER, J., also dissenting :

The evidence shows an inclosure by a fence—not very substantial, it is true—maintained during a period of more than ten years, and other acts of dominion exercised over the lot by the plaintiff and her grantors. It also discloses a recorded title derived from the original locators of a larger claim taken

up as early as 1855, embracing the *locus in quo*, consisting of conveyances of the original claimants and their successors in interest, and a conveyance by the Sheriff in pursuance of a sale under a judgment foreclosing a mortgage. The claims and acts of ownership of the plaintiff and her grantors were notorious, and the defendants were naked intruders upon the well known claim and within the inclosure of their neighbor. Whatever the rule might be, if the contest was between the plaintiff and the holder of the legal title, I am not prepared to say that the jury were not justified by the evidence in finding against the defendants. I think, therefore, that the verdict ought not to be set aside on the ground of insufficiency of the evidence, and I see no other sufficient ground for reversing the order of the District Court. I think the judgment and order should be affirmed.