# JACOB STAININGER, Appellant, *v.* GEORGE ANDREWS *et al.*, Respondents.

Possessory Title to Pulic Land. A title to public land not surveyed or brought into the market by Government, sufficient to maintain ejectment, may be acquired only in one of two ways; either by a compliance with the requirements of the statute relating to possessory actions, or by actual possession or occupation of such land.

Reasonable Time to Improve Public Land. A settler on public land is entitled to a reasonable time after his location to inclose it, or to make such improvements as may be necessary to its enjoyment; and during such time he will be protected precisely the same as if he had perfected by possession, by inclosure, or otherwise.

Possession Necessary to Maintain Ejectment. A settler on public land, if ousted after the lapse of reasonable time within which to improve it, can recover against the person in possession only by showing an actual, notorious prior possession.

Sankey *v.* Noyes (1 Nev. 68) Approved as to possession of public land required to maintain ejectment.

Actual Possession. Actual possession of land is the purpose to enjoy the same, united with or manifested by such visible acts, improvements or inclosures as will give to the locator the absolute and exclusive enjoyment of it.

Reasonable Diligence in Taking Actual Possession. A locator upon public land, who shows that he first entered upon it, marked out the boundaries, and diligently proceeded, or diligently made preparations, to do such acts as were necessary to constitute an actual possession, will be entitled, even without showing an actual possession, to recover against a person subsequently entering.

Question of Fact. The question as to whether a settler on public land has proceeded with reasonable diligence to follow up his location with the necessary improvements, so as to recover against a subsequent possessor, is a question of fact for the jury.

Appeal from the District Court of the Seventh Judicial District, Nye County.

Ejectment for a tract of about one hundred and sixty acres of land on Musquito Creek.

The complaint was in the usual form. The answer of George Andrews contained a general denial, and also set up ownership and possession in his brother, Thomas Andrews, up to the time of his death, previous to the commencement of the suit; and since that time, ownership in his estate and possession in H. M. Barnes, his administrator, and in the defendant in subordination to such administrator. A petition of intervention, setting up substantially the same facts as the answer, was filed by the administrator, praying to be permitted, as such, to defend the title and possession; to which petition there was an answer of plaintiff denying each and every allegation therein.

On the trial the plaintiff produced four witnesses, from whose testimony it appeared that on or about July 18th, 1866, the plaintiff and his brother, Samuel Staininger, determined to locate three quarter sections of public land for agricultural purposes on Musquito Creek, the upper one for Samuel, the middle one for a partner of theirs named Bliss, and the lower (the one in dispute) for the plaintiff. They proceeded to construct a shanty or shelter of willow brush upon the middle quarter section, and marked the boundaries by putting up posts at each corner of each of the quarter sections, and then a line of poles from two to three hundred yards apart around the entire tract, and dug short ditches from each of the corner posts along the boundary lines, intended to designate the direction of the lines. The corner posts were large, with the ground from the ditches thrown up into mounds around them; the poles were from eight to twelve feet high, and could be seen from any part of the tract. They had with them a pick, a shovel, and an ax, and a short stock of provisions.

On July 21st, their provisions becoming exhausted, they started for Austin, intending to return with supplies and settle permanently, with their partner, upon the land. That place was eighty miles distant, but the nearest point at which they could obtain provisions and tools. Before leaving, they deposited their shovel, pick and ax in the shanty, and put up a notice on it, written on paper, describing their claim to the land, and stating that they had gone

to Austin for provisions. After an absence of seven days, they returned from Austin, with a team, provisions and tools, arriving on July 28th, and Bliss came with them. They found Thomas Andrews in possession of the quarter section claimed by plaintiff. They demanded possession from him, which was refused. He admitted that he had seen their posts and poles and marks of location, and the written notice left by them, but said that he had possession and intended to hold it, and that if plaintiff wanted it, he would have to fight for it. Several attempts were made to obtain possession of the quarter section in dispute, but were repelled by force.

On the close of the plaintiff's testimony, defendants moved for a nonsuit on the ground that sufficient possession had not been shown to recover in ejectment. The Court below sustained the motion and ordered judgment accordingly.

*J. C. Foster*, for Appellant.

1. A recovery may be had upon prior possession alone, without complying with the provisions of the Possessory Act. (*Coryell* v. *Cain*, 16 Cal. 573; *Bradshaw* v. *Treat*, 6 Cal. 172; *Hawxhurst* v. *Lander*, 28 Cal. 331; *English* v. *Johnson*, 17 Cal. 115.)

2. The acts performed by plaintiff were, under the peculiar circumstances of the case, sufficient to enable him to recover. They do not come within the rule laid down in *Plume* v. *Seward*, 4 Cal. 96; *Hutton* v. *Schumaker*, 21 Cal. 453; and *Borel* v. *Rollins*, 30 Cal. 408, in each of which a great length of time had elapsed between the time of location of plaintiffs and ouster by defendants.

The doctrine contended for is, that if a party goes on a piece of vacant land and commences to perform that series of acts which is necessary to reduce it to possession, and while proceeding in good faith, is prevented by force from continuing them, he is entitled to recover against the wrong-doer. He who, by force or fraud, prevents the necessary acts from being done, shall not afterwards be allowed to defend on the ground that they have not been performed. (*Sankey* v. *Noyes*, 1 Nev. 68.)

It may be said that the plaintiff was absent at the time the

defendants entered.    True : but they were away for the purpose of getting the necessaries of life and tools to enable them to improve the land they had located ; and if the same rule applies to the improvement of land that applies to mining claims, and there is no good reason why it should not, then they were at work.    (*Packer* v. *Heaton,* 9 Cal. 570 ; *McGarrity* v. *Byington,* 12 Cal. 426.)

3. After plaintiff's return from Austin he attempted to improve the land, but was driven off by force and threats of violence ; notwithstanding all which he went on and improved that part of his claim which was not included in the land claimed by the defendants, and built a cabin, in which he lived ; and also fenced that part of it as far as he was permitted by the defendants.

It will be seen by *Barnes* v. *Stark,* (4 Cal. 412) that when a series of acts is required to be performed, the last act relates back to the first ; and that if a party who enters and commences the performance of a series of acts necessary to be done in order to comply with the statute, or to obtain possession, and while he is performing the first act could by force be thrust aside by another party, his claim occupied, and his possession destroyed, on the ground that the claimant first entering upon the land had not completed his possession, it would be to promote wrong, violence, and public mischief—a construction which ought nowhere to receive encouragement.    (See also *Kelly* v. *Natoma Water Co.,* 6 Cal. 108 ; *Maeris* v. *Bicknell,* 7 Cal. 262 ; *Kimball* v. *Gearhart,* 12 Cal. 27 ; *Weaver* v. *Eureka Lake Co.,* 15 Cal. 271.)

4. If the above views be correct, the case resolves itself into a mere question of diligence and good faith, and a mere recital of the facts is sufficient to establish beyond doubt that the plaintiff used all diligence in his power to follow up the first act, to wit, the marking the boundaries of his claim and erecting a temporary shelter.    Certainly, traveling one hundred and sixty miles in six or seven days, and at the same time attending to the business which caused him to go so far, was by no means a dilatory movement ; and, even if not to be considered work done on the claim, it was using all the means in his power to commence work at the earliest possible moment.

If a party may be interrupted at any time before he has reduced

the land to possession, after he has commenced to do so, at what time may he not be interrupted before he finishes his last act? Might not defendants have taken possession by force when plaintiff was doing this last act as well as when he was doing the first? Would his remedy have been any more complete? If he is not entitled to maintain this action, there exists a wrong for which the law provides no remedy.

*Thomas Fitch,* also for Appellant, contended that the posting of a notice of claim by plaintiff upon the land was evidence of possession, *Thompson* v. *Lee,* (8 Cal. 280); that the placing a line of stakes around the land was evidence of possession, *Sankey* v. *Noyes,* (1 Nev. 68); and that the going to Austin for tools and provisions was evidence of possession, (9 Cal. 569); and that the granting of the motion of nonsuit was therefore error: that those acts, if followed by inclosure, occupancy, and continuous acts of ownership, would have completed the *pedis possessio* of plaintiff and perfected his rights thereunder; that the inclosure and continuous occupancy by plaintiff were prevented by the fault and wrongful acts of defendant, and that defendant should not be permitted to take advantage of his own wrong.

As to the question of reasonable diligence on the part of plaintiff he argued: Must a man be required to fence and improve a tract of land in a minute, or an hour, or without cessation from labor for food or rest after he once commences, at the peril of losing all rights? or is not the true doctrine rather that when a party is proceeding in good faith, in due course, and with reasonable diligence, to perform the acts necessary to constitute possession of public land, and is interrupted and driven off by another, he will be held as against that other to have done the acts which he was unlawfully prevented from doing?

Did the plaintiff show reasonable diligence in following up this first act of appropriation? He worked as long as his provisions lasted and until he needed other and more tools. He was eighty miles from a store where these articles could be purchased. He was absent but a week in obtaining them. The Court will certainly take cognizance of these facts, as well as of the social condition of

the country it judicially rules, and not require a fence to be completed around, or a house built upon, a hundred and sixty acres of land, in a valley destitute of timber and eighty miles from a store or town, in the same time that it might require a town lot of twenty-five by one hundred feet to be fenced and occupied where there was a lumber yard within a hundred yards and a grocery and hardware store at every corner.

*George S. Hupp*, also for Appellant, urged the same views of the case as the other counsel, contending that the acts of plaintiff previous to his leaving the land for Austin were sufficient to put all subsequent comers upon inquiry, and that his acts after his return with reference to the association of his right of possession connected themselves by the doctrine of relation with the previous acts.

On the question of nonsuit he contended that the evidence in character, quantity, and degree would have warranted a verdict for plaintiff, or rather, that if there had been a verdict for plaintiff it would have been error in the Court to grant a new trial, on the ground of insufficiency of evidence to justify it. (*Ringgold* v. *Haven*, 1 Cal. 114; *Labar* v. *Koplin*, 4 Comst. 549; *DeRo* v. *Cordes*, 4 Cal. 117; *Sheldon* v. *Hudson R.R. Co.*, 29 Barb. 229; *Cravens* v. *Dewey*, 13 Cal. 42.)

The question in the case was one peculiarly for the consideration of the jury, and in view of reason, principle, and authority, should have been submitted for their determination. If plaintiff could not, under the circumstances, leave the premises for seven days, could he for six, or five, or one, or one hour? It was a question for the jury and not the judge to pass upon.

*Harry J. Thornton*, for Respondents.

The nonsuit was properly allowed if the evidence offered by plaintiff was clearly insufficient to support his action. (*Murphy* v. *Wallingford*, 6 Cal. 648; *Polack* v. *Smith*, 32 Cal. 16.)

To maintain ejectment it was incumbent upon plaintiff to show compliance with the provisions of "An Act prescribing the mode of maintaining and defending possessory action on public lands in this State." (Statutes 1864-5, 343.) Or common law possession

of the land. His reliance is upon common law possession. He does not show it. When Andrews entered there was no inclosure —no actual presence of the claimant—no legal *possessio pedis*, and none were at any time since acquired or pretended.

The case of *Sankey* v. *Noyes*, (1 Nev. 71) cited by plaintiff does not support his case. It is clear from the recital of the facts in the opinion of the Court in that case, that Sankey was ejected from complete possession. Sankey had caused a survey to be made of the ground claimed by him—had commenced clearing it— had cleared off one or two acres on the west side, and fenced on the south and east sides with a substantial fence, and grubbed out the grounds for the other two strings of fence, preparatory to fencing the entire lot; and was driven in person from the premises. This all unquestionably made the legal *pedis possessio*—the subjection of the land to the dominion and control of the party standing upon it and appropriating it; and fully justified the decision made. The facts here are very different; and it is clear from them, as well as from the argument of counsel, that plaintiff's acts were sufficient to put all subsequent comers upon inquiry, and the attempt to apply the doctrine of relation. They in fact all admit that plaintiff never had actually acquired possession of the land in dispute; had only performed the first of the series of acts necessary to possession, and had then absented himself from the locality, intending they say to return and to take full possession on a future day.

Unable then to establish actual possession, plaintiff seeks to recover on his *intention to possess*. I am not familiar with any case in which it has been held that land could be recovered on this shadowy claim of intended but unaccomplished possession. None has been cited for the appellant.

The doctrine of relation contended for by the plaintiff is only applied where the acts of location and appropriation are completed, and then the title acquired relates back to and dates from the first act. Suppose notice claiming a water ditch be first put up, then survey of route made, but no ditch ever dug; would the right to the water exist at all, or could it relate back to the notice? Would not one claiming the same water by subsequent notice and survey, and with a constructed ditch, have the right?

If A put up a notice claiming all the water of a stream, and immediately survey the route, and immediately and with due diligence proceed to construct his ditch, which it requires one year to complete, and B, after A, put up a notice claiming the same water, and immediately make his survey of his route, and immediately with due diligence proceeds to construct his ditch, which it requires six months to complete, and takes possession of the water, when the ditch of A is ready he is entitled to the water over B, and this is the very case of *Stark* v. *Barnes*, (4 Cal. 412). But if A after his notice and survey never complete his ditch, he would not be entitled to the water over B, and this is the case at bar. (See also *Preston* v. *Kehoe*, 15 Cal. 316.)

The case of *Stark* v. *Barnes* was under the Possessory Act, and Stark invoked the doctrine of relation, because he complied with all the requirements of the statute, and the last act could relate back to his entry. But *Preston* v. *Kehoe*, like the case at bar, was upon common law possession; and though Preston completed his possession by diligently proceeding from the first to the completion of his inclosure, the doctrine of relation was not applied and he was beaten on the ground of public policy sustaining the known rules of law.

The possession acts of Staininger were not equal to those either of Stark or Preston. He did not claim under the statute as Stark did, and he did not complete title or possession so that the doctrine of relation could be applied. His diligence and intention to possess were not superior to Preston's, and his acts of possession were not equal to those of Preston.

By the Court, LEWIS, J.

There seem to be but two methods in this State of acquiring title sufficient to maintain ejectment to public land not surveyed or brought into the market by the General Government, and these are : *First*—By a compliance with requirements of " An Act prescribing the mode of maintaining and defending possessory actions for public lands in this State," Laws of 1864-5, page 343 ; and *Second*—By actual possession or occupation of such land.

The plaintiff in this action does not pretend to have complied with the requirements of the law above referred to, and hence his

title, if he has any, rests entirely upon his possession or appropriation of the land in controversy.

Whether he had acquired such possession of the land at the time the defendant intruded upon it as to entitle him to recover it in this · action, is the only question now demanding the consideration of the Court.    The person first locating a tract of public land should have a reasonable time after the location to inclose it, or to make such improvement as may be necessary to its enjoyment; and during that time he must be protected precisely the same as if he had perfected his possession by inclosure or otherwise. But if ousted after the lapse of such reasonable time he can only recover by showing an actual, notorious prior possession.    Such has been the rule almost invariably followed by the Courts, whenever the question has been directly presented.    So it was held in the case of *Plume* v. *Seward*, (4 Cal. 94) and in *Coryell* v. *Cain*, (16 Cal. 567).    In this last case the Supreme Court of California uses the following language upon the question :

"And with public lands, which are not mineral lands, the title as between citizens of the State, where neither connects himself with the Government, is considered as vested in the first possessor, and to proceed from him.    This possession must be actual and not constructive, and the right it confers must be distinguished from the right given by the Possessory Act of the State.    That Act, which applies only to lands occupied for cultivation or grazing, authorizes actions for interference with or injuries to the possession of a claim not exceeding one hundred and sixty acres in extent, where certain steps are taken for the assertion of the claim, and to indicate its boundaries.    Parties relying upon the right conferred by this Act must show a compliance with its provisions.    They can thus maintain their action without showing an actual inclosure, or actual possession of the whole claim.    But when reliance is placed, not upon the Act, but upon prior possession of the plaintiff, or of parties through whom he claims, such possession must be shown to have been actual in him or them."

In delivering the opinion of the entire Court in the case of *Lawrence* v. *Fulton*, (19 Cal. 690) Justice Norton said :

"The Court charged the jury that to enable the plaintiff to

recover they must be satisfied that the person under whom he claimed had had an actual *bona fide* occupation, and had subjected the land to his will and control for some space of time ; that mere assertion of title, coupled with casual acts of ownership, is not sufficient. This charge is objected to on the ground that the word occupation is more extensive than the word possession, and conveyed to the jury the idea that the party must himself have lived upon the premises. The word occupant may be so used in connection with other expressions, or under peculiar facts of a case as to signify a residence. But ordinarily the expression ' occupation,' ' *possessio pedis*,' ' subjection to the will and control,' are employed as synonymous terms, and signifying actual possession."

The Court held the charge given by the Court below as correct, and affirmed the judgment. (See also *Hutton* v. *Schumaker et al.*, 21 Cal. 453). The doctrine declared in these cases was subsequently approved in *Polack* v. *McGrath*, (32 Cal. 15). The Kentucky Court of Appeals say in *Myers et al.* v. *McMillan's Heirs*, (4 Dana, 483) that when prior possession alone, short of twenty years, is relied on in ejectment, it must be shown to have been an actual possession, or such as would maintain trespass. So this Court held in the case of *Sankey* v. *Noyes*, (1 Nevada, 68). That the plaintiff must show an actual prior possession after he has had a reasonable time to secure it, to enable him to recover in ejectment where possession alone is relied on, is a rule clearly declared by the authorities above referred to ; but what is to be understood as an actual possession, or what acts will constitute it, is the question now left to be determined. Actual possession of land is the purpose to enjoy, united with or manifested by such visible acts, improvements or inclosures as will give to the locator the absolute and exclusive enjoyment of it. But it is almost impossible to give a succinct, and at the same time a comprehensive definition of actual possession. It will be better explained and understood by a reference to decided cases, and the language generally employed by the Court with respect to it. In the case of *Sander & Myers* v. *McMillan's Heirs*, (4 Dana, 456) Judge Marshall, in delivering the opinion of the Court, makes use of this language : " From this principle it follows that the prior possessor must have

had such a possession *at the time of the entry of the defendant,* or those under whom he claims, as would enable him to maintain an action of trespass for the entry."

"By actual possession," says Chief Justice Field, in *Coryell v. Cain,* (16 Cal. 567) is meant a subjection to the will and dominion of the claimant, and is usually evidenced by occupation, by a substantial inclosure, by cultivation, or by appropriate use, according to the particular locality and quality of the property."

In the case of *Murphy v. Wallingford,* (6 Cal. 648) it was shown that in the year 1850 the plaintiff entered upon a tract of land, caused it to be surveyed and the boundaries marked, built a house upon it, in which he resided, and inclosed and cultivated a portion of the tract. The defendant in 1852 entered upon the land within the boundaries of the survey, but not within the inclosure. When these facts were proven the defendant moved for a nonsuit, which was refused, but the Supreme Court held that the nonsuit should have been granted. Mr. Justice Terry, in delivering the opinion of the Court, says that "possession is presumptive evidence of title, but it must be an actual *bona fide* occupation—a *pedis possessio*—a subjection to the will and control, as contradistinguished from the mere assertion of title and the exercise of casual acts of ownership. A mere entry, without color of title, accompanied by a survey and marking of boundaries, is not sufficient." So it was also held in *Garrison v. Sampson,* (15 Cal. 93). In *Hutton v. Schumaker,* (21 Cal. 454) it is said by the Chief Justice "mere inclosure of a lot with a fence of this character, (a brush fence) without any other steps being taken to subject the property to any use, is not a sufficient evidence of ownership, or right of possession in the plaintiff, to sustain ejectment against one subsequently entering upon the premises." (See also *Polack v. McGrath,* 32 Cal. 15.)

Upon such possession alone can a plaintiff, who relies solely upon prior possession, recover in ejectment, after he has had a reasonable time between the location and ouster to secure such possession. But right and justice dictate that a person locating upon the public land should be protected whilst he is making the improvements which, when completed, will give him the actual possession, and

that he should have a reasonable time within which to do the necessary work.

It may often take weeks or months of diligent work to reduce a tract of public land to actual possession, and whilst diligently pursuing the purpose of reducing it to his possession the locator may at times necessarily be compelled to leave it unoccupied.

During such period, surely, the law should protect him, although if ejected he would not be able to show that he had secured an actual possession. That he had not had a reasonable time after his first location within which to secure such possession, and that he had prosecuted the necessary improvement with due diligence, would be a sufficient answer to the failure to show an actual possession. In such case, if the plaintiff shows that he first entered upon the land, marked the boundaries, and diligently made preparations to do those acts necessary to constitute an actual possession, he will be entitled to recover. The material questions, therefore, to be determined in all cases of this kind are: First—Did the plaintiff locate the land before the defendant? and Second—After locating it did he proceed with reasonable diligence to subject it to his will and control by the prosecution of such work, or the making of such improvements as might be necessary to the complete enjoyment of the land. If so, he should recover. But if, on the other hand, it be shown that he made the first location, but did not diligently follow it up with the necessary improvements or inclosures, or rather if it be found that a sufficient time had elapsed between the time of such location and the entry of the defendant to have enabled him, the plaintiff, to reduce the premises to actual possession, in such case he can only recover by showing such actual possession. Hence, if it were shown in this case that the plaintiff made the first location of the land in question, and that he had with reasonable diligence followed up such location with the necessary improvements, or with preparations to make such improvements, he should recover. That is a question of fact which could only be decided by weighing and considering all the evidence, and should therefore have been submitted to the jury.

The nonsuit should not have been granted.

Judgment reversed and a new trial ordered.