SARAH A. TOWNSEND, AS ADMINISTRATRIX OF THE ESTATE OF JOSIAH E. TOWNSEND, DECEASED, APPELLANT, VS. LOT W. EDWARDS, APPELLEE.

1. The plaintiff instituted ejectment against defendant for certain lands. Defendant claimed title under tax deed, which was in evidence. The plaintiff then offered in evidence the assessment roll to show that the land had not been assessed for taxes, but the evidence was ruled out, because the tax deed had been recorded more than a year before the suit was brought, and that after one year from the recording of the tax deed plaintiff could not question the validity of the same, or the regularity of the sale under which the land was sold, unless he allege, and prove, that the land was not subject to taxation, or that the taxes had been paid, or that the land had been redeemed : *Held*, To be error.

2. Adverse possession, in order to bar a recovery by the true owner, must have *continued without interruption* during the statutory period of seven years.

Appeal from the Circuit Court for Columbia county.

The facts of the case are stated in the opinion of the court.

*Geo. Wheaton Deans* for Apellant.

No counsel appearing for Appellee.

MITCHELL, J.: Appellant instituted ejectment in the Circuit Court against the appellee for the recovery of a town lot situate in Lake City.

The declaration was demurred to, in that it is insufficient in law, that the plaintiff does not allege that the property described in the declaration sold for taxes was not subject to taxation, or that the taxes had been paid before such sale, or tha the property so sold had been redeemed according to law. The demurrer was overruled.

At the same term the defendant filed two pleas,

1. Not guilty;

2. That the taxes paid, improvements made on the land, &c., amounted to $300.

At the trial plaintiff offered in evidence a deed from J. C. Greeley, Assignee in Bankruptcy of Arthur J. T. Wright, Bankrupt, to C. M. Ellis, and Ellis' deed to her deceased husband, Josiah E. Townsend, and a copy of her letters of administration, all of which were admitted without objection. Plaintiff then introduced J. E. Young as a witness, who testified that he knew the land in dispute. That A. J. T. Wright was in possession of it in 1869, &c. Plaintiff then rested.

Defendant claimed title under tax deed to J. E. Young, dated July 1st, 1875, and intermediate conveyances. The tax deed from the Clerk of the Circuit Clerk, Columbia county, to J. E. Young, dated July 1st, 1875, was then offered in evidence by defendant, which was objected to by plaintiff, but the Court admitted it. The intermediate conveyances from Young to defendant were then offered in evidence, their introduction being objected to, but they were also admitted.

The plaintiff being dissatisfied with the rulings of the court, took a non-suit and appealed.

The statute (McClellan's Dig., 215, sec. 6,) provides that "No conveyance, transfer or mortgage of real property, or of any interest therein, shall be good or effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same shall be recorded in the office assigned by law for that purpose; and in order to procure the recording of any such conveyance, transfer or mortgage, the execution thereof by the party making the same shall be acknowledged by such party, or shall be proved upon oath by at least one of the ubscribing witnesses thereto, before the officer authorized

by law to record the same, or before some judicial officer of this State."

The tax deed to Young was made in less than one year after the sale of the land, which was clearly a violation of the statute, as the owner was entitled to redeem the land at any time within a year after the sale; and the deed was recorded on the same day it bears date, and it was admitted to record without being acknowledged by the clerk before any officer authorized to take such acknowlegment, and hence such record was a nullity. Edwards, Executrix, vs. Thom, decided at the last term of the court; 5 So. Rep., 707. Now, when these acts of the clerk are considered in connection with other facts and circumstances of the case, for instances, that the land was sold without any anthority whatever on the part of the officer who pretended to sell it.

After the defendant had concluded his evidence, plaintiff offered in evidence the Assessment Roll for taxes for the year 1873, (the land was alleged to have been sold for non-payment of taxes for that year,) for the purpose of showing that the land in question was not assessed for that year; to the introduction of which the defendant objected, and the court sustained the objection on the ground, " that the tax deed offered in evidence herein had been recorded in the records of the said county more than a year before this suit was brought, and that after one year from the time said deed was recorded plaintiff was precluded from questioning the validity of said deed or the regularity of the sale under which it was sold, except plaintiff allege, and prove, that the said lot was not subject to taxation, or that the taxes had been paid, or that it had been properly redeemed."

This ruling of the court was clearly erroneous. Carncross vs. Lykes, 22 Fla., 587; Mundee vs. Freeman, 23

Fla., 529 ; Sloan et al. vs. Sloan et al., decided at the last term of this court, 5 So. Rep. 803.

The plaintiff proposed to show by this evidence so offered, that the land had not been assessed for the year 1873, and offered the Assessment Roll in evidence for that purpose, and as the introduction of this evidence was objected to by the defendant, we take it for granted that the Assessment Roll would have shown what the plaintiff proposed to show by it, and if this be true, the evidence so offered would have established the fact that the land was sold without any authority of law. The Collector of Revenue derives his authority to sell property, for non-payment of taxes, under the warrant attached to the Assessment Roll, and he can sell no property which is not on the Roll, and when he does sell without such authority, such sale is without any legal authority whatever, and to say, that the regularity of such transactions cannot be enquired into, is a proposition that might lead to consequences of the greatest wrong and oppression. A man might go to the assessor and honestly give in his taxes, and the assessor might neglect to place them upon the Roll, and, if he did, and the party owing the taxes were to go to the collector for the purpose of paying his taxes, the collector could not *as collector* receive the taxes because they were not assessed, and yet it is contended that the collector could afterwards sell the land under these circumstances, and the regularity of the sale could not be questioned. This cannot be the law of the case. If such a sale were allowed to stand, it would be depriving the owner of his property without due process of law.

There is another question. Had the defendant, or those under whom he claims title, acquired a legal title to the land in controversy by open, notorious and continuous ad-

verse possession of the same for seven years before the commencement of this suit?

The tax deed to Young (under whom defendant claims title,) was dated July 1, 1875, and Young deeded to C. C. Robinson, September 9, 1881; Robinson conveyed to Bigelow, December 15, 1881, and Bigelow conveyed to the wife of the defendant June 12, 1883.

And now, even admitting that Young exercised such ownership over the land as to show that he was holding it openly, notoriously and adversely to the plaintiff, from the time he received a deed to the land till he conveyed to Robinson, he did not so hold for seven years, and hence he did not acquire a statutory title. Further, what is the evidence as to the adverse possession of Young?

Young, sworn for defendant, says: " I bought the lot in controversy at a tax sale on the 6th of July, 1874. Afterwards during that year, and perhaps during the years of 1875 and 1876, and possibly in 1877, I cut up one or two fallen trees on that lot for fuel, and also a few small oak trees and hauled them away. This occurred all within the first year or two after I got a tax deed of the lot. After that till I sold it to C. C. Robinson, 1881, I did not cut any more wood upon it. I did not fence the lot or build upon it." On cross, witness said : " I exercised the same ownership over it that I did over my other unoccupied lots." The bill of exceptions was subsequently amended as to Young's evidence, by adding the following: " I paid taxes on the land from the time I bought it till I sold it. I took from the land wood. I exercised right of possession and ownership over it. I had wood cut on it in '76 or '77, I think in '76. Some was fallen down and I cut some down. It was the first of '76, or first of '77. Lot Edwards is now in possession and has the land fenced and cleared. I have not taken any wood from off the lot since 1876 or 1877.

Took wood but one time.  The lot was not fenced or enclosed when I sold it.  It was fenced till about 1881 or 1882."

This is all the evidence in the case as to the adverse possession of the land by the defendant and those under whom he claims title, and what does it prove ?  Does it prove open, notorious and continuous adverse possession of the land for seven years before suit brought ?  If it does then the defendant has established a good title under our statute, but if he has failed in establishing all of these prerequisites his title fails.

Where is the evidence to show that the possession of the land was held adversely for seven years ?  Young's testimony does not show it, and there is no other testimony in regard thereto.  If Young ever held this land adversely to the plaintiff, he shows by his own testimony that it was for a shorter time than seven years.  He sold the land in 1881, but there is nothing in his testimony to show that any one had control of, claimed, or otherwise exercised any ownership over the land from that time till, as he says, Edwards fenced it in 1881 or 1882, but in this he is clearly mistaken, as Edwards did not buy the land till 1883.  The continuous adverse possession of the land for seven years is not shown ; on the contrary the continuity was broken when Young sold, unless it is shown that Young's grantee claimed, took possession of and exercised ownership over the land, but as to this, the evidence is silent, and there is nothing to show that any one else claimed, occupied or exercised such ownership from the time of the sale by Young till the defendant bought in 1883, and as the defendant claimed adversely to the plaintiff, it was incumbent upon him to show that the possession of himself and his grantors was continuous for seven years.

Adverse possession, in order to bar a recovery by the true

owner, must have continued, without interruption, during the statutory period.

If interrupted, even by fraud or force, and the possession be recovered by a peaceable or forcible entry, or by process of law, the continuity is broken, and the statute begins to run only from the time of the re-entry. McCracken vs. City of San Francisco, 16 Cal., 591; San Francisco vs. Fulde, 37 Cal., 349; City of San Jose vs. Trimble, 41 Cal., 536; Raimond vs. Eldrige, 43 Cal., 506; Lovell vs. Frost, 44 Cal., 471; Hayes vs. Martin, 45 Cal., 559.

As to what constitutes adverse possession, see Simson vs. Eckstein, 22 Cal., 580; Borel vs. Rollins, 30 Cal., 408; Vassault vs. Seitz, 31 Cal., 225; Polack vs. McGrath, 32 Cal., 15; Brumagim vs. Bradshaw, 39 Cal., 24; Gray vs. Collins, 42 Cal., 152; McCreery vs. Everding, 44 Cal., 246; Lovell vs. Frost, 44 Cal., 471; Thompson vs. Pioche, 44 Cal., 508; Thompson vs. Felton, 54 Cal., 507.

The court erred in refusing to admit in evidence the Assessment Roll for the year 1873, and in overruling the motion for a new trial.

There was no error in overruling the demurrer to the declaration.

The judgment of the court below is reversed, and the cause is remanded with directions for further proceedings not inconsistent with this opinion.